THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELLIS D. WATTS, Defendant-Appellant.

Third District   No. 3—91—0064

Opinion filed February 21, 1992.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Robert M. Hansen and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

The defendant, Ellis D. Watts, appeals his conviction for aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14). We affirm.

According to the record, Sonja Brown testified that on January 4, 1990, around 3 a.m., she was walking near downtown Peoria when a car pulled up next to her. Overton Pace was driving, and the defendant sat in the front passenger seat. Brown accepted Pace's offer of a ride and got in between the two men. Brown told Pace she wanted to . go to the Warner Homes. Pace, however, drove past there and repeatedly insisted that Brown would fellate him.

After Pace stopped at an isolated spot near the river, he got out to urinate. Brown tried to leave through the passenger door, but the defendant held it shut. She then got out through the driver's door, but Pace kicked her, struck her in the eye, and forced her back into the car. Pace subsequently forced Brown to fellate him. At the same time, the defendant pulled down Brown's pants and forced her to have intercourse. After both men ejaculated, Pace pulled Brown out of the car. At Pace's request, the defendant helped him throw Brown down an embankment toward the river. The two then drove away. Brown waited a minute before leaving the embankment. She then went to her mother's house and called the police.

After speaking to the police, Brown was taken to the hospital. Her attending physician testified that she was fearful and upset, and that she had swelling around her left eye and abrasions on her back. During the examination, he collected "rape kit" materials from her.

The next day, the police went to the defendant's house. After receiving permission from a family member to enter, they found him hiding in a refrigerator in the basement. The officers then placed him in custody.

Various items of evidence were collected from Pace, Brown, the defendant, and Brown's boyfriend. Dana Sligar, a forensic scientist and serologist, testified that seminal material on Brown's vaginal and rectal swabs showed A, B, and H blood activity. She concluded that any of the four could have contributed to the material. The oral swab showed B and H blood activity; either Pace or Brown could have contributed to it. Seminal material in the crotch of Brown's jeans showed a PGM type of 1+, 1-. The defendant was the only one of the four who could have contributed such material. Regarding all of the items, Sligar concluded that none of the males could be eliminated as a contributor of the semen if one assumed more than one donor to each item.

For his part, the defendant denied committing the offense. He stated that in the early morning hours of January 4, Brown approached the car and asked if they had any money. When Pace said he did, she entered the car and began negotiating with him about performing an act of fellatio for money. Pace then drove to a deserted area. After the defendant left the car, Pace had Brown fellate him. The two then quarreled about the money he owed her. When Brown threatened to report a rape, Pace struck her. After he made her perform another act of oral sex, he dragged her out of the car and threw her down an embankment. The defendant and Pace then drove off. He admitted that following his arrest, he told the investigating officer that he was home at the time of the incident and knew nothing about it.

The State responded with stipulated rebuttal evidence that the defendant, in speaking to an officer following the arrest, had admitted that he had rubbed Brown's leg and touched her buttocks; that he had touched her pubic hair; and that he had pretended to take his penis from his pants.

During closing arguments, the prosecutor made the following remarks:

> "The defendant, what is his interest, bias, or prejudice? Well, he's the one on trial here. You recall his testimony. He's a 17 year old male attending Manual High School, getting ready to enter into adulthood. Do you think he'd want to go through the rest of his life with a conviction for Aggravated Criminal Sexual Assault? When you consider his testimony, you can consider his interest, bias, or prejudice in avoiding a conviction. It's his desire to get off this charge, and his desire, the evidence would show, has led Ellis Watts to commit perjury and to lie."

Following the close of arguments, the trial judge instructed the jury that the charging instrument was not evidence against the defendant and did not create an inference of guilt. (Illinois Pattern Jury Instructions, Criminal, No. 2.02 (2d ed. 1981) (hereinafter IPI Criminal 2d).) He also told the jury that the defendant was presumed to be innocent and that the presumption of innocence continued with him throughout trial. IPI Criminal 2d No. 2.03.

Following six hours of deliberations, the jury found the defendant guilty of aggravated criminal sexual assault.

On appeal, the defendant argues that the prosecutor committed reversible error in arguing that the defendant had a motive to lie because he faced a conviction for aggravated criminal sexual assault. The defendant contends that the prosecutor improperly implied that a

defendant is presumed to lie merely because of his status as a defendant, and that the prosecutor also diminished the defendant's presumption of innocence.

The defendant did not object to these comments at trial. Consequently, we can only reverse if the comments constituted plain error. (*People v. Morgan* (1991), 142 Ill. 2d 410, 568 N.E.2d 755.) Plain error is defined as error of such magnitude that it denied the defendant a fair trial, or error in a trial where the evidence is closely balanced. *People v. Whitehead* (1987), 116 Ill. 2d 425, 508 N.E.2d 687.

The prosecutor's comments were improper because they implied that the defendant lied simply because of his status as a defendant. We find, however, that they did not constitute plain error. The evidence in this case was not closely balanced, given the inconsistency between the defendant's testimony and the story he told the police, as well as the matching of the seminal material on Brown's jeans with the defendant.

The comments also did not deprive the defendant of a fair trial. The prosecutor is given broad leeway in closing arguments. (*People v. Franklin* (1990), 135 Ill. 2d 78, 552 N.E.2d 743.) The remarks were an isolated instance of alleged error, and they were not dwelt on at length. Moreover, the comments must be considered within the context of the entire trial. In this regard, the Illinois Supreme Court has noted that arguments carry less weight with the jury than the instructions, because the former are billed in advance as argument, not evidence, and the latter are seen as definitive and binding statements of the law. (*People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895.) The trial court's instructions on the burden of proof and the charging instrument therefore lessened the prejudicial effect of the comments. (See *Lawler*, 142 Ill. 2d at 564-65, 568 N.E.2d at 902.) Accordingly, we affirm the conviction. We emphasize, however, that we do not condone this tactic, and under different circumstances it could lead to reversible error.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, P.J., and McCUSKEY, J., concur.