THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TER-ENCE CROSS, Defendant-Appellant.

First District (2nd Division)   Nos. 1—93—0353, 1—93—4516 cons.

Opinion filed March 21, 1995.—Rehearing denied May 10, 1995.—Modified opinion filed May 23, 1995.

DiVITO, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Christine Perille, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Terence Cross, appeals his conviction for second degree murder, contending that (1) the circuit court erred in sustaining hearsay objections to his attempts to testify to his state of mind prior to the shooting; (2) the verdict forms given to the jury improperly denied him a fair trial; (3) the second degree murder statute is unconstitutional; (4) the prosecutor's comments during closing argument improperly denied him a fair trial; and (5) his sentence was excessive.

Defendant shot and killed John Mack Connor. The State charged him with first degree murder; he claimed that he acted in self-defense.

At trial, Baten Prince Phillips testified that in the evening of April 16, 1991, he and four friends drove to the home of his girlfriend, Cathy Stewart, at 72nd and Yates in Chicago. He wanted to talk to her about an incident that occurred the previous day, which involved a scuffle in which defendant's girlfriend, Michelle Randle, fought with Stewart and her two friends. Defendant had broken up the fight.

When they arrived at 72nd and Yates, Phillips learned that defendant was standing across the street, and he approached him. He had never met defendant before. Defendant told Phillips that he knew who he was. Phillips told defendant that there was no need for him to get involved in their two girlfriends' fight.

The discussion became heated. Phillips noticed that his friends had crossed the street and were about 10 feet away from him. Subsequently, defendant pushed Phillips, who pushed him back. Phillips testified that defendant pulled out a gun and that everyone began to run. Phillips ran, heard two shots, and then noticed that his friend John Mack Connor had been shot. Defendant meanwhile ran away. Phillips ran back to Connor, who was fatally wounded. Phillips previously pled guilty to auto theft and received 30 months' probation.

Jonathan Boston and Antoine Land, two of Phillips' friends who accompanied him in the car on the night in question, also testified. Boston asserted that they all alighted at 72nd and Yates. Boston and Land both testified that after Phillips crossed the street to talk to defendant, the others also went across the street because one of them had seen an old friend. They saw defendant push Phillips and Phillips push back. Phillips said that defendant had a gun and started running towards his friends. Boston saw defendant fire two shots in their direction. Boston and Land then saw that Connor had been shot. Boston had four prior convictions for possession of a controlled substance and had a fifth possession case pending.

Chicago police officer Robin McKenzie, the responding officer at the scene of the shooting, interviewed several people and began touring the area in search of defendant, whom she found later that evening. He surrendered himself to her custody.

Defendant testified that on April 15, 1991, he broke up a fight between Stewart and his girlfriend, Randle. As he went to pick up Randle from the police station that evening, he was told that Stewart's boyfriend, Phillips, had learned of the fight, and that "they had a bullet with my name on it when I come down Yates."

When defendant was asked why he was carrying a gun on the night in question, the circuit court sustained the State's objection. The defense made an offer of proof that defendant was carrying a gun because he believed his life was in danger and that defendant was informed Phillips was coming after him to "beat him to a bloody pulp or kill him." The court ruled that whatever defendant may have thought was irrelevant and sustained the objection.

Defendant testified that the next day, as he was walking down the steps of a friend's home at 7158 South Yates, Phillips and Land, both of whom he knew, approached him. Phillips asked defendant if he was Randle's boyfriend and why he hit Stewart. Phillips and Land stood in front of defendant and called three men whom defendant did not know. They crossed the street and surrounded defendant. One man was 6 feet 5 inches in height and weighed 265 pounds. There was no avenue of escape, and defendant feared for his life. They then

started hitting him from the back and jumping on him. As defendant went down, he saw Land pull out a gun. Defendant then pulled out his gun and shot it. Defendant heard Phillips say "pop him, pop him now," so he ran from the scene. As he was running, he heard about 12 shots and saw 4 people chasing him. He threw his gun in the lake because he was afraid that if the police saw him with it they would shoot him.

Defendant then went to a friend's house and called some of his relatives to tell them what had happened. He learned that the police were looking for him and arranged for his friend to call the police and tell them where to pick him up, which they did.

At the police station, he was questioned by a detective and an assistant State's Attorney, to whom he told substantially the same story as that which he told at trial. The assistant State's Attorney presented defendant with a written statement, which defendant did not write, that said that defendant did not see any of the people surrounding him with a weapon. At trial, defendant denied making that statement and reiterated that Land had a gun.

During cross-examination, defendant acknowledged that he read the statement, signed each page and initialled corrections, but made no changes to it. He was given a physical examination, but did not tell anyone that he was beaten. Defendant further acknowledged that he had previously pled guilty to armed violence in another case and received a six-year sentence.

In rebuttal, the State presented several witnesses. Valencia Smith, a paramedic who examined defendant when he was admitted to the Cook County jail on April 17, 1991, testified that defendant reported no injuries and that she saw no bruising or swelling on defendant. Officer McKenzie testified that defendant never told her that he was struck or that he was chased and shot at.

Detective George Carey testified that defendant told him that he was beaten by a group of men and that one of them had a gun. Assistant State's Attorney Jonathan Lustig testified that he spoke with defendant at the police station on the evening of April 17, 1991. Defendant gave an oral statement and agreed to have Lustig summarize it in writing. Defendant then read the written statement and was told that he may make changes to it. Defendant signed it.

Lustig was permitted to read defendant's statement to the jury. In the statement, defendant asserted that on April 15, 1991, he broke up a fight between Randle and Stewart. When he went to get Randle out of jail, he learned that Phillips, Stewart's boyfriend, intended to harm him. The next day, defendant went to visit a friend who lived in the area where Stewart lived and thought he would try to

straighten things out with Phillips. Defendant brought a gun with him for protection. When defendant exited his friend's building, Phillips and another man approached him. Phillips accused him of hurting Phillips' girlfriend. An argument ensued and Phillips called three men, from across the street, who encircled defendant. No one of them displayed a weapon. Someone struck him from behind. Defendant removed his gun, fired twice at Phillips, and ran towards the lake.

The issues concerning closing argument and jury instructions and verdict forms will be considered under parts II and IV of this opinion.

The jury found defendant guilty of second degree murder. The circuit court sentenced defendant to 13 years' imprisonment, to run consecutively to the prior six-year sentence.

This court granted defendant's petition to file a late notice of appeal.

I

Defendant first contends that the circuit court erred in sustaining objections to questions concerning threats made against him and to questions regarding his state of mind at the time of the offense. Defendant failed to raise this issue in his motion for a new trial.

Failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124), except where plain errors or defects affect substantial rights. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) The exception applies only when the question of guilt is close and the evidence in question might have affected the outcome of the case significantly, or where the error alleged is so substantial as to reflect adversely on the fairness or impartiality of the trial regardless of how closely balanced the evidence is. (*People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241.) Although defendant's post-trial motion states generally that he was denied due process and deprived of a fair trial, it lacks the specificity that is required to bring objections to the attention of the circuit court. (See *People v. Smith* (1985), 139 Ill. App. 3d 21, 31-32, 486 N.E.2d 1347.) Nevertheless, we find plain error as to this issue.

An individual is justified in using deadly force if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself. (Ill. Rev. Stat. 1991, ch. 38, par. 7—1 (now 720 ILCS 5/7—1 (West 1992)).) In criminal cases where the intention, motive, or belief of the accused is material to the issue of his or her guilt, he or she has a right to testify directly

to that fact. (*People v. Keefe* (1991), 209 Ill. App. 3d 744, 751, 567 N.E.2d 1052.) Self-defense necessarily involves the question of whether defendant subjectively believed, at the time of the incident, that the force exercised against the victim was necessary. (*Keefe*, 209 Ill. App. 3d at 751.) Improper exclusion of state-of-mind testimony by an accused which is essential to his or her self-defense claim ordinarily constitutes reversible error unless other sufficient evidence of his intent is admitted at trial. *Keefe*, 209 Ill. App. 3d at 752.

■ The evidence in this case was closely balanced. The record shows that on April 15, 1991, Randle and Stewart got into a fight, which defendant broke up. Phillips went to 72nd and Yates the following day to tell defendant that he should not be involved in their girlfriends' affairs. Phillips brought four friends with him who crossed the street to where defendant was standing and stood within 10 feet of Phillips and defendant as they argued and pushed each other. Boston and Land maintain that they were talking to an old friend while the two argued. Phillips claimed that after defendant pushed him, defendant pulled out a gun and shot twice.

Defendant testified that when he picked up Randle from the police station, he learned that there was a "bullet with [his] name on it" and that information about the fight had been passed on to Phillips. The following day he was approached by Phillips and Land after visiting a friend. Phillips asked defendant why he had hit Stewart and called his three friends over, who then surrounded defendant. Phillips' friends began hitting and jumping on defendant. When defendant saw Land pull out his gun, he got out his own gun, which he had brought for protection, and shot it.

The versions of the story clearly conflict; which account is more credible is a close question.

Would absence of the error significantly have affected the outcome? Defendant testified that there was a "bullet with [his] name on it" and that Phillips was aware of this information; however, defendant was precluded from testifying as to how seriously he took Phillips' alleged threat or how fearful he was as he walked the streets that evening. This deprived defendant of the opportunity to show his reasonableness in carrying a gun and, more importantly, why firing two shots may have been reasonable in preventing his death or great bodily harm. We conclude that defendant's excluded testimony might have affected the outcome of the case. This exclusion cannot be deemed harmless for the same reason. The exclusion was plain error, requiring reversal of defendant's conviction.

## II

Defendant next asserts that he was denied a fair trial when the circuit court failed to give the jury a general "not guilty" verdict form, as required by the Illinois Pattern Jury Instructions. Defendant again failed to object at trial or in his post-trial motion that the jury instructions, when read in their entirety, did not properly inform the jury of the applicable law.

Failure to object at trial to a perceived error and to raise that issue in a subsequent post-trial motion results in waiver of the question on review unless it can be considered plain error. (*People v. James* (1993), 255 Ill. App. 3d 516, 526, 626 N.E.2d 1337 (*James*).) A vital part of a trial is the reading of instructions by the court to the jury at the close of the oral arguments. Defendant is entitled to an instruction on his defense if supported by any evidence. *James*, 255 Ill. App. 3d at 526-27.

Supreme Court Rule 451(a) provides in pertinent part that the IPI Criminal instructions "shall be used, unless the court determines that it does not accurately state the law." (134 Ill. 2d R. 451(a).) When a jury is to be instructed only on first and second degree murder, it should be provided with three verdict forms: not guilty, guilty of first degree murder, and guilty of second degree murder. (Illinois Pattern Jury Instructions, Criminal, No. 26.01A (3d ed. 1992) (hereinafter IPI Criminal 3d).) Clearly, a general "not guilty" verdict form must be used in this situation. IPI Criminal 3d No. 26.02, Committee Note.

At the instruction conference, the State tendered an instruction which read in pertinent part: "you will be provided with three verdict forms: 'not guilty', 'guilty of first degree murder', and 'guilty of second degree murder.' " The circuit court read this instruction to the jury. But, the State also tendered the following three verdict forms: "not guilty of first degree murder," "guilty of first degree murder," and "guilty of second degree murder," to which defendant did not object. The circuit court read and gave these verdict forms to the jury. Thereby, the jury was not given a general "not guilty" verdict form.

In *James*, the court confronted a similar issue. There, the circuit court agreed at the instruction conference that it would give the jury three verdict forms which allowed for pronouncements of "not guilty of any arson related offense," "guilty of aggravated arson," and "guilty of arson," but gave the jury forms which allowed the jury to find the defendant "guilty of aggravated arson," "guilty of arson," "not guilty of aggravated arson." No general "not guilty" form was given, as was the circumstance in the present case. Defendant in

*James* failed to object either at trial or in a post-trial motion; he was convicted of aggravated arson.

The *James* court first found that defendant there did not waive this issue because it was plain error for the circuit court to fail to give an instruction that it agreed to give during the instruction conference, as in the present case. Next, the court reasoned that by failing to give the jury a general "not guilty" verdict form, there was a "reasonable probability that this error had the effect of removing from the jury's consideration the elements of arson and conveying the message to the jury that it was its duty only to determine whether the aggravating factor of the greater offense was present, thus directing a verdict of guilty on the charge." (*James*, 255 Ill. App. 3d at 528.) The court concluded that the error undermined the reliability of the verdict and denied defendant a fair trial. *James*, 255 Ill. App. 3d at 528.

At the jury instruction conference in this case, both sides agreed to IPI Criminal 3d No. 26.01A, which provides that a jury be given a general "not guilty" verdict form. The circuit court read this instruction to the jury. This was the appropriate form of verdict wherever, as here, "the jury is to be instructed only on first and second degree murder" (IPI Criminal 3d No. 26.01A, Committee Notes). The dissent acknowledges as much. (272 Ill. App. 3d at 367.) For some reason, however, the dissent quotes from Committee Notes to 26.01B (272 Ill. App. 3d at 367), the verdict form of which the notes direct for use in first and second degree murder cases *and* whenever "(2) the jury is to be instructed on some other charge or charges" as well, which is *not* the case at bar. Although, as the dissent asserts, "[t]his is a proper instruction" (272 Ill. App. 3d at 367), and it may well be, it is not proper in this case, as People's instruction No. 19 reveals, which is the embodiment of IPI Criminal 3d No. 26.01A, not No. 26.01B.

Lawyers and judges may understand that finding a defendant not guilty of first degree murder permits the jury to stop deliberations as to guilt right there. The jury in this case was not so instructed. Instead, it was directed to look for a form which the State said it would furnish, but did not, and the court instructed the jury would be provided, but was not. The circuit court's failure to give this instruction deprived the jury of considering an alternative to guilty of second degree murder, which the court said it would give, since the only "not guilty" instruction given was that related to first degree murder, without any further explanation. Prejudice to defendant under these circumstances should need no highlighting.

Reference in the dissent to *People v. James* and observations as to second degree murder not being a lesser included offense of first degree murder, which clearly it is not, are extraneous to the issue of

the circuit court's misdirections to the jury in a vital aspect of the trial in this case. The omission of the No. 26.01A verdict form constituted plain error and denied defendant a fair trial.

## III

■ Defendant's next argument, that the second degree murder statute (Ill. Rev. Stat. 1991, ch. 38, par. 9—2 (now 720 ILCS 5/9—2 (West 1992))) violates due process, has been decided adversely to his contentions many times.

In *People v. Doss* (1991), 214 Ill. App. 3d 1051, 574 N.E.2d 806, this court upheld the constitutionality of section 9—2. (See also *People v. Gore* (1991), 212 Ill. App. 3d 984, 571 N.E.2d 1041; *People v. Clark* (1991), 207 Ill. App. 3d 439, 565 N.E.2d 1373; *People v. Jerome* (1990), 206 Ill. App. 3d 428, 564 N.E.2d 221; *People v. Buckner* (1990), 203 Ill. App. 3d 525, 561 N.E.2d 335.) Further, the constitutionality of the statute has now been upheld by the Illinois Supreme Court on similar arguments in *People v. Jeffries* (1995), 164 Ill. 2d 104, 107, and no longer can be challenged.

## IV

Defendant next contends that he was denied a fair trial when the prosecutor made improper comments during closing argument. Defendant yet again failed to preserve this issue by not objecting at trial or in his post-trial motion.

Ordinarily, the failure to object to closing comments at trial and in the post-trial motion results in a waiver of that issue on appeal (*People v. Henderson* (1990), 142 Ill. 2d 258, 322, 568 N.E.2d 1234); however, because the comments in this case may be repeated after retrial, they will be considered.

The first alleged error identified was when the prosecutor contrasted the three eyewitnesses he produced to the lone witness who testified for the defense and told the jury that defendant did not produce any more witnesses because his story was so unbelievable. The State asserts that this was a mere comment on the credibility of defendant's case.

It is impermissible for the prosecution to attempt to shift the burden of proof to the defense. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432.) Indeed, the defense is under no obligation to present any defense. Once defendant does present certain evidence, however, it is not beyond the reach of appropriate comment by the prosecution. (*People v. Phillips* (1989), 127 Ill. 2d 499, 527, 538 N.E.2d 500.) Not every prosecutorial statement questioning the relevance or credibility of defendant's case rises to an impermissible shifting of the burden. (*Phillips*, 127 Ill. 2d at 527.) A prosecutor may

not comment on defendant's failure to produce a witness when there is no evidence that such a witness exists, however. (*People v. Nevitt* (1990), 135 Ill. 2d 423, 451, 553 N.E.2d 368.) Such a comment is not based on a reasonable inference from evidence presented and may mislead the jury concerning the proper burden of proof. *Nevitt*, 135 Ill. 2d at 452.

In this case, the prosecutor made the following comments to the jury:

> "[T]he story that [defendant] testifies to at trial is just simply ridiculous. The reason there is no other witness that came forward other than the Defendant to testify to that story is because it was so ridiculous that no one else would every [*sic*] conceive something would happen that way.
>
> \*\*\*
>
> \*\*\* His testimony is unsupported by any other witnesses. By anybody else because it's too ridiculous. Unlike what the evidence that we presented to you that three eyewitnesses testified to."

The record is unclear as to how many witnesses there were to the shooting. At trial, when Phillips was asked if anyone crossed the street to where he and defendant were arguing, he replied: "Really not positive. I think so but it was a hot day and it was a lot of people outside." Phillips' four friends were 10 feet away when defendant shot the gun, and Boston and Land testified that an old friend was also present. Of the potential eyewitnesses, the State only called Phillips' friends to testify. Neither the "old friend" nor anyone else testified. Phillips' friends were not disinterested parties in the shooting, however, as defendant implicated them in an attempt to murder him.

■ The prosecutor's comments that defendant failed to produce corroborating witnesses is not a fair inference from the evidence. It is not reasonable to expect that Phillips' friends, who witnessed the death of their friend Connor and who were simultaneously implicated by defendant, would testify on defendant's behalf. Because the prosecutor's comments were not based on a reasonable inference of the evidence and may have misled the jury concerning the proper burden of proof, they were improper.

The next allegedly improper comment resulted when the prosecutor remarked that defendant had "the biggest motive of anybody \*\*\* to lie because he doesn't want to take responsibility for what happened." The State responds that this attack on defendant's credibility was based on his unbelievable story, not his status as defendant.

In *People v. Crowder* (1993), 239 Ill. App. 3d 1027, 1030, 607 N.E.2d 277, the prosecutor stated during closing argument: "Donna Crowder, what's her interest, bias or prejudice? Well, she's the Defendant here, she stands a chance of getting convicted. That's one very large reason she should have of trying to slant her testimony, of trying to shift the blame away." The court found those comments to be improper because they implied that defendant is presumed to lie simply because of her status as defendant and diminished defendant's fundamental right to the presumption of innocence. (*Crowder*, 239 Ill. App. 3d at 1030-31. See also *People v. Watts* (1992), 225 Ill. App. 3d 604, 588 N.E.2d 405.) There is no substantial difference between the comments in this case and those in *Crowder*. The comments here attack defendant's status as a defendant, diminish his presumption of innocence, and were improper.

The last alleged error by the prosecutor during closing argument is a statement that the assistant State's Attorney would not risk his law license by lying to the jury. The State maintains that it may comment on the credibility of the witnesses if it is supported by the evidence.

Although prosecutors are permitted latitude in their closing arguments, they may not comment on their beliefs in the credibility of witnesses; their remarks must be based on the evidence and reasonable inferences drawn therefrom. *People v. Cox* (1990), 197 Ill. App. 3d 1028, 1041, 557 N.E.2d 228.

In *People v. Young* (1990), 206 Ill. App. 3d 789, 812, 564 N.E.2d 1254, the prosecutor argued to the jury: "Is [the assistant State's Attorney] going to come in here risking his law license *** to put a bad rap on the defendant, Charles Young?" The court held that the remarks were proper because they were made in response to defendant's testimony contradicting the assistant State's Attorney about the circumstances of the confession and were based on the facts in evidence. *Young*, 206 Ill. App. 3d at 812.

In the case *sub judice*, the prosecutor said during closing argument:

> "Now, one of the other things that [defendant] says in [his statement] is that no one else had a gun. Would this State's Attorney put his law license on the line to come and lie to you about what [defendant] said? I submit that when the credibility issue is whether or not [defendant] is lying or a lawyer licensed to practice law in Illinois is lying that [defendant's] the one that's lying. The reason he wrote that in the statement, the reason he signed it was because that's what he said."

At trial, defendant testified that he never told the assistant State's Attorney that the other men were not armed. Clearly, these closing

remarks, as in *Young*, were responses to defendant's testimony contradicting the assistant State's Attorney about the circumstances of the confession. Further, the evidence supports the witness' status as an assistant State's Attorney. These latter comments by the prosecutor, although borderline, were not improper.

## V

Defendant's final argument is that the circuit court abused its discretion in sentencing him to 13 years' imprisonment where he only had one prior conviction, his behavior was unpremeditated, and his conduct was nondeterable. Because we reverse and remand for a new trial, the sentence is vacated; however, a similar issue may arise upon retrial and certain observations therefore will be made.

In fashioning appropriate sentences, the circuit court is in a better position than a reviewing court because it can make a reasoned judgment based on firsthand consideration of factors such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*People v. Streit* (1991), 142 Ill. 2d 13, 556 N.E.2d 1351.) A sentence will not be disturbed on review unless it greatly diverges from the purpose and spirit of the law or is highly disproportionate to the nature of the offense. (*People v. Nelson* (1982), 106 Ill. App. 3d 838, 846, 436 N.E.2d 655.) The standard of review is whether the circuit court abused its discretion. *Nelson*, 106 Ill. App. 3d at 846.

■ At sentencing in this case, the court considered in aggravation that defendant pled guilty to armed violence on January 14, 1992, and was sentenced to six years in prison. Defendant could have received between 4 and 15 years for the second degree murder conviction. (Ill. Rev. Stat. 1991, ch. 38, pars. 9—2(d), 1005—8—1(a)(4) (now 720 ILCS 5/9—2(d), 730 ILCS 5/5—8—1(a)(4) (West 1992)).) It is true that defendant's actions may be nondeterable; however, it cannot be said that the circuit court, which observed firsthand defendant's credibility, demeanor, and general moral character, abused its discretion.

For the reasons stated, defendant's conviction and sentence are reversed and vacated, and the cause is remanded for a new trial.

Reversed; vacated and remanded for new trial.

McCORMICK, J., concurs.

JUSTICE DiVITO, dissenting:
I respectfully dissent. Neither the trial court's evidentiary rulings nor the State's arguments constituted plain error, and the verdict forms given to the jury were proper.

## STATE-OF-MIND EVIDENTIARY RULINGS

After objections to questions concerning why defendant was carrying a gun had been sustained, defendant's attorney made the following offer of proof:

> "Specifically he was carrying the weapon for his protection not only because of the area, the neighborhood, but more specifically because he knew or had information in his possession that Prince Phillips was coming up to settle some business with him."[1]

In his opening statement, defense counsel connected defendant's carrying a gun to "what violence occurs here"; during trial, defendant testified that he was in a very violent, high crime area; and, in closing argument, defense counsel talked about the reasonableness of defendant's carrying a gun in his neighborhood. That defendant carried the gun because of his concern about dangers in the area of the shooting was before the jury. Plainly, defendant was not prevented from offering that explanation for his carrying the gun.

It is true that the court's rulings did not allow him to specifically explain that he carried the gun because of fear of Phillips. Nevertheless, through the admission of his statement to the assistant State's Attorney, that defendant was "warned" that Phillips "had said he would harm [him] if he found him" and that he brought the gun with him for protection were in evidence and before the jury. Additionally, defendant, who testified that he did not know whether the gun he carried was loaded, testified that he was told that "they had a bullet on my name [*sic*] when I come down Yates," and he testified variously that he fired his gun because of fear for his own life, because he had no avenue of escape, because he was being beaten, and because someone else had pulled a gun. This evidence prompted defense counsel's closing argument that Phillips and the other State witnesses were "assassins" who "were coming to give some pay back."

Although the court should have allowed defendant to present the proffered state-of-mind testimony that his carrying the gun was

---

[1]The majority too broadly states that the court excluded state-of-mind testimony. Thus, it concludes:

> "[D]efendant was precluded from testifying as to how seriously he took Phillips' alleged threat or how fearful he was as he walked the streets that evening. This deprived defendant of the opportunity to show his reasonableness in carrying a gun and, more importantly, why firing two shots may have been reasonable in preventing his death or great bodily harm." (272 Ill. App. 3d at 359.)

The only issue presented by the record before us, however, is whether the court's rulings, in not allowing defendant to testify that he *carried the gun* as protection against Phillips, constituted plain error.

partially due to his fear of Phillips, that fact was before the jury in many different ways. The court's rulings therefore did not constitute plain error. *People v. Parker* (1990), 194 Ill. App. 3d 1048, 1058-59, 551 N.E.2d 1012 (improperly excluded evidence concerning defendant's state of mind merely cumulative where defendant gave both direct and circumstantial evidence on the issue); *People v. Sims* (1994), 265 Ill. App. 3d 352, 638 N.E.2d 223 (considering entire record, excluded state-of-mind evidence that victim carried and pulled gun day before shooting was harmless).

## VERDICT FORMS

Regarding the verdict-form issue, the majority is correct that "[a]t the jury instruction conference in this case, both sides agreed to IPI Criminal 3d No. 26.01A." (272 Ill. App. 3d at 367.) This is a concluding instruction where the jury is to be instructed on first and second degree murder and not on any other charge. It provides that the jury will be "provided with three verdict forms: 'not guilty', 'guilty of first degree murder', and 'guilty of second degree murder'." (IPI Criminal 3d No. 26.01A.) The majority interprets this to mean that the court's failure to give the jury a general "not guilty" verdict form amounts to reversible error. This interpretation is incorrect.

IPI Criminal 3d No. 26.01B, a concluding instruction to be given when the jury is also to be instructed on some other charge or charges, is nearly identical to IPI Criminal 3d No. 26.01A in its first five paragraphs. The last two paragraphs concern the other, nonmurder, charges. But where IPI Criminal 3d No. 26.01A states that the jury will be provided with verdict forms indicating that the defendant is " 'not guilty', 'guilty of first degree murder', and 'guilty of second degree murder,' " IPI Criminal 3d No. 26.01B states that the jury will be provided with verdict forms indicating that the defendant is " 'not guilty of first degree murder', 'guilty of first degree murder', and 'guilty of second degree murder.' " This is a proper instruction, although it differs from No. 26.01A.

The committee notes to No. 26.01B make this point clear:

> "The Committee considered and rejected the idea of making one of the verdict forms read, 'not guilty of first degree murder and not guilty of second degree murder.' Under the present statutory scheme concerning homicide offenses, there can be no such verdict as, 'not guilty of second degree murder.' *** Only after the State has first proved the defendant guilty of first degree murder may the jury consider whether the defendant has met his burden of proving the existence of a mitigating factor to reduce his crime to the lesser offense of second degree murder. Thus, a finding by the

jury that the defendant is not guilty of first degree murder bars the jury from considering second degree murder at all. Accordingly, the jury need be provided only with a verdict form of 'not guilty of first degree murder'." IPI Criminal 3d No. 26.01B, Committee Note, at 349.

The Illinois Supreme Court's decision in *People v. Jeffries* (1995), 164 Ill. 2d 104, 646 N.E.2d 587, reinforces this position. In discussing the mental state required for second degree murder, the court stated:

"Having determined that the mental states for murder and second degree murder are identical, it is evident that second degree murder is not a lesser included offense of first degree murder. Rather, second degree murder is more accurately described as a *lesser mitigated offense* of first degree murder." (Emphasis in original.) (*Jeffries*, 164 Ill. 2d at 122, 646 N.E.2d at 595.)

In *Jeffries*, the court cited *People v. Newbern* (1991), 219 Ill. App. 3d 333, 579 N.E.2d 583, with approval for its holding that "second degree murder *** is a mitigated offense because it is first degree murder *plus* defendant's proof by a preponderance of the evidence that a mitigating factor is present." (Emphasis in original.) *Jeffries*, 164 Ill. 2d at 122, 646 N.E.2d at 595.

Only after the State proves the elements of first degree murder may a defendant seek to mitigate the charge to second degree murder. The only possible verdicts the jury could return are: (1) not guilty of first degree murder; (2) guilty of first degree murder; or (3) guilty of second degree murder, which is guilty of first degree murder plus mitigation. There can be no such verdict as not guilty of second degree murder under our statutory scheme.

In this case, the court instructed the jury using IPI Criminal 3d No. 26.01A, which on its face requires a general not guilty verdict form. The actual verdict forms given to the jury, however, included the form described in No. 26.01B: "We, the jury, find the defendant, Terrence Cross, Not Guilty of First Degree Murder." As the majority points out (272 Ill. App. 3d at 360), defendant did not object. Because this is a valid verdict form, even if the giving of a general not guilty form was both preferable and required by No. 26.01A, defendant was not prejudiced.[2]

The majority's reliance on *People v. James* (1993), 255 Ill. App. 3d

---

[2]The majority incorrectly states that the jury was not instructed "that finding a defendant not guilty of first degree murder permits [*sic*] the jury to stop deliberations as to guilt right there." (272 Ill. App. 3d at 361.) On the contrary, the jury was properly instructed as to the process it was to follow. It received an instruction based on IPI Criminal 3d No. 7.06A, which in relevant part stated as follows:

516, 626 N.E.2d 1337, is misplaced. Unlike the situation in this case, in *James* the court was dealing with a lesser included offense. A finding of not guilty of aggravated arson would still have exposed the defendant to a conviction for arson. Because no not guilty of arson verdict form was tendered, the defendant in *James* faced automatic conviction on some charge. That is not the case here, where second degree murder is most emphatically not a lesser *included* offense of first degree murder. Acquittal on the first degree murder charge would have cleared defendant of both first degree murder and the lesser *mitigated* charge of second degree murder.

## FINAL ARGUMENT ISSUES

The majority should never have addressed the final argument issues because it reverses defendant's conviction on other grounds. (See *People v. Melock* (1992), 149 Ill. 2d 423, 466, 599 N.E.2d 941.) Having chosen to address the issues, however, the majority should have found that defendant waived them because he failed to object or to include the issues in his post-trial motion.

Nothing said in final argument constituted plain error. As the supreme court has said, our standard of review is that "in order for the statements to be considered plain error they must be either 'so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process.' (*People v. Albanese* (1984), 104 Ill. 2d 504, 518.)" *People v. Phillips* (1989), 127 Ill. 2d 499, 524, 538 N.E.2d 500, 509.

The prosecutor's comments that defendant's testimony was not supported by any other witness may have been improvident, but viewed in the context of what the prosecutor said about the "ridiculous" nature of the story told by defendant as he discussed the numer-

---

"If you find from your consideration of all the evidence that any one of these propositions [relating to first degree murder] has not been proved beyond a reasonable doubt, you should find the defendant not guilty of first degree murder and your deliberations on this charge should end.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, then you should go on with your deliberations to decide whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder instead of first degree murder.

You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the propositions of first degree murder."

ous inconsistencies in defendant's versions, it was merely a comment on the fact that his testimony lacked credibility. Similar comments were approved by the supreme court in *People v. Phillips* (127 Ill. 2d at 526-27, 538 N.E.2d at 510-11). These comments did not constitute plain error.

As for the prosecutor's comment about defendant's motive for testifying, the majority cites *People v. Watts* (1992), 225 Ill. App. 3d 604, 588 N.E.2d 405, but neglects to point out that the similar comments made there did not rise to the level of plain error. Nor did they rise to that level here.

## CONCLUSION

The majority's declaration that this is a close case does not withstand scrutiny. A number of witnesses corroborated the State's version. Defendant's version was offered only by him. Some of the evidence that impeached defendant's version of what occurred included his flight and disposal of the gun; his failure to state in earlier statements that he had been beaten by anyone, that anyone had pulled a gun, or that anyone had fired a gun; his failure to report any injury and the absence of any sign of injury on him; and the absence of any physical evidence at the scene, such as bullets or shell casings or bullet damage, that would have corroborated his version that 12 shots were fired at him.

Plain error considerations do not warrant reversal of this conviction.