First Division

September 30, 1999

No. 1-97-1849

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

Plaintiff-Appellee, )  Cook County.

)

v. )

)

BETH KAUFFMAN, )  Honorable

)  Gerald T. Rohrer

Defendant-Appellant. )  Judge Presiding

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial, defendant Beth Kauffman was convicted of second degree murder and sentenced to a five-year term of probation.  Defendant now appeals, contending that the trial judge erred (1) in instructing the jury on second degree murder over her objection; (2) in failing to instruct the jury in conformity with the Illinois Pattern Jury Instructions; (3) in denying her request to instruct the jury on defense of dwelling; and (4) in denying her motion to admit into evidence certain information pertaining to the victim’s propensity for violence.  For the reasons that follow, we conclude that the trial judge did not err in instructing the jury on second degree murder.
  
However, we remand this cause for a new trial because the jury instructions and verdict forms did not conform to the Illinois Pattern Jury Instructions for first and second degree murder.  As it is likely to recur in a new trial, we also address defendant’s third issue and conclude that the trial judge did not err in denying defendant’s request to instruct the jury on defense of dwelling.  However, we find it unnecessary to address defendant’s final contention.

I. Second Degree Murder Instruction.

Defendant was charged only with first degree murder and at trial argued she acted in self-

defense.  At the State’s request and over defendant’s objection, the trial judge instructed the jury on second degree murder, and the jury found defendant guilty of that offense.  Defendant now appeals, contending that she was entitled to pursue an all-or-nothing defense requiring the jury to choose between convicting her of first degree murder or finding her not guilty.  According to defendant, the trial court erred in instructing the jury on second degree murder because it provided the jury with a third option resulting in a compromise verdict.  Defendant premises her argument on the statutory language of section 9-2(c) of the Criminal Code of 1961 (720 ILCS 5/9-2(c) (West 1998)) and case law from the area of lesser included offenses.

A. Section 9-2(c) of the Criminal Code of 1961

Defendant bases her argument on the following excerpt of section 9-2(c):

“In a jury trial for first degree murder in which evidence of [a statutory mitigating factor] *** has been presented 
and the defendant has requested that the jury be given the option of finding the defendant guilty of second degree murder
, the jury must be instructed ***.”  (Emphasis added.) 720 ILCS 5/9-2(c) (West 1998). 

She  argues this provision should be interpreted to mean that a second degree murder instruction may be given 
only
 where there is evidence of mitigation 
and
 
the defendant
 
requests 
such an instruction be given.  

A primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, and
 “[t]o accomplish this goal, a court will seek to determine the objective the legislature sought to accomplish and the evils it desired to remedy.”  
People v. Jeffries
, 164 Ill. 2d 104, 110 (1995).  Through the enactment of Public Act 84-1450 (Pub. Act. 84-1450, eff. July 1, 1987) (1986 Ill. Laws 4222)), of which section 9-2(c) was a part, the legislature intended to “remedy the confusion and inconsistency that had developed in regard to the murder and voluntary manslaughter statutes.”  
Jeffries
, 164 Ill. 2d at 111. 

Under the previous statutory scheme, 
murder and voluntary manslaughter were defined as two distinct offenses, although they had common elements.  To be guilty of either offense, a defendant had to have intentionally or knowingly caused the death of the victim.  The distinction between murder and voluntary manslaughter was that a defendant who acted either “under a sudden and intense passion resulting from serious provocation” or under an unreasonable but honest belief that deadly force was justified to prevent the defendant’s own imminent death or great bodily harm was guilty of voluntary manslaughter.  Compare Ill. Rev. Stat. 1985, ch. 38, par. 9-1 and Ill. Rev. Stat. 1985, ch. 38, par. 9-2.  Serious flaws in this statutory scheme and the attendant jury instructions became apparent, compelling the legislature to amend the statute.
(footnote: 1)  

First, to convict a defendant of voluntary manslaughter, the 
State
 was required to prove every element of murder 
plus
 the existence of mitigating circumstances.  However, where a defendant was on trial for murder, the State would direct its efforts toward convicting a defendant of that offense.  It was very unlikely to offer evidence of mitigating circumstances that would reduce the offense from murder to voluntary manslaughter.  Even if the 
defendant
 presented overwhelming evidence that she acted with an unreasonable belief in self-defense and was therefore guilty of voluntary manslaughter, a jury that carefully and literally followed its instructions would be unable to render such a verdict because then-current instructions directed the jury to return a verdict of guilty of voluntary manslaughter only if the 
State
 proved defendant’s unreasonable belief of justification beyond a reasonable doubt.  See 
People v. Reddick
, 123 Ill. 2d 184, 194-95 (1988).

Moreover, whenever the jury returned a voluntary manslaughter verdict, it necessarily found that the State had proved each of the elements to convict the accused of murder.  Thus, a jury following the relevant instructions could return a guilty verdict on both murder and voluntary manslaughter based upon a single homicide.  In those cases where the jury returned multiple verdicts, the trial judge was left with the dilemma of determining which offense to impose sentence on.  See, 
e.g.
, 
People v. Flowers
, 138 Ill. 2d 218, 228-33 (1990); 
People v. Washington
, 127 Ill. App. 3d 365 (1984).  

Finally, murder was defined without reference to the absence of the mitigating circumstances distinguishing it from voluntary manslaughter.  Thus, it was possible for the State to prove murder 
without actually disproving that the defendant subjectively believed she was acting in self-defense or that her actions were the result of serious provocation.  In order to return a murder verdict, the jury was required to find that the defendant was not completely justified in the use of deadly force.  However, the jury was not told that if it found that the defendant “had acted with some lesser level of justification it could not convict her of murder.”  
Falconer v. Lane
, 905 F.2d 1129, 1133-37 (7th
 Cir. 1990) (holding Illinois instructions violated due process).   This problem was exacerbated by the structure of the instructions, which encouraged the jury to first consider the requirements of murder and to consider voluntary manslaughter only if the murder requirements had not been met.  
Falconer
, 905 F.2d at 1136; see also 
Martin v. Ohio
, 480 U.S. 228, 233-34, 94 L.Ed.2d 267, 273, 107 S.Ct. 1098, 1101-02 (1987) (stating in 
dicta 
that a due process violation would occur if the jury was instructed that evidence of self-defense “must be put aside for all purposes unless it satisfied the preponderance standard”).  

Through section 9-2(c), the legislature sought to remedy the above problems.  See 84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 71-73 (statements of Representatives Homer and Cullerton).  Signaling a departure from the previous statutory scheme, the offense of murder was changed to first degree murder, and voluntary manslaughter was abolished and replaced with second degree murder.  In its entirety section 9-2(c) provides:  

"(c) When a defendant is on trial for first degree murder and evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented [unreasonable belief in necessity of self-defense or passion-provocation], the burden of proof is on the defendant to prove either mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second degree murder.  However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing under the principles stated in Article 7 of this Code.  In a jury trial for first degree murder in which evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented and the defendant has requested that the jury be given the option of finding the defendant guilty of second degree murder, the jury must be instructed that it may not consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder.”  720 ILCS 5/9-2(c) (West 1998). 

We are not persuaded that this provision should be interpreted to provide that a second degree murder instruction may only be given where there is mitigating evidence 
“and the defendant has requested” 
that the jury be instructed on that offense.  The language of section 9-

2(c) is designed to remedy those problems that developed under the murder-voluntary manslaughter statutory scheme.  In contrast to the situation under that scheme, section 9-2(c) specifies that the defendant, rather than the State, bears the burden of proving the mitigating factors necessary to reduce the offense from first degree murder to second degree murder.  It also requires the State to prove the absence of circumstances that would justify or exonerate the killing.  
Jeffries
, 164 Ill. 2d at 114.  If the State fails to prove that the defendant was not justified in her use of force, “then the jury must find the defendant not guilty of first degree murder and its deliberations end.  If the State, however, has successfully negated the defendant’s claim of self-

defense and has proven each of the other elements of first degree murder, then, and only then may the jury proceed to a determination of second degree murder.”  
Jeffries
, 164 Ill. 2d at 128-29 (interpreting section 9-2(c)). 

Bearing in mind the context in which section 9-2(c) was enacted, the legislature’s use of the language “and the defendant has requested” that the jury be instructed on second degree murder does not take on the connotation that 
only
 the defendant may request an instruction on second degree murder and that the State is foreclosed from seeking such an instruction.  If we were to accept defendant’s reasoning, the result would be that a defendant who proceeded by way of a jury trial would have the absolute right to pursue an all-or-nothing defense, but a defendant who elected to proceed by way of a bench trial would not have such a right.  We do not believe this result was intended by the legislature.  

As subsequently discussed, second degree murder is not a lesser included offense of first degree murder but a lesser mitigated offense.  
Jeffries
, 164 Ill. 2d at 122-23.  Ordinarily, a defendant cannot be convicted of an uncharged offense unless it is a lesser included offense of the crime charged. 
 People v. Schmidt
, 126 Ill. 2d 179, 183-84 (1988). 
 
However, in 
People v. Rogers
, 286 Ill. App. 3d 825 (1997), the court held that departure from this general rule was authorized by section 9-2(c), which states that “[w]hen a defendant is on trial for first degree murder *** the defendant can be found guilty of second degree murder.”  720 ILCS 5/9-2(c) (West 1998).  Thus, pursuant to 
Rogers
, a defendant charged only with first degree murder may be convicted of second degree murder even though it was not charged and is not a lesser included offense.  Although 
Rogers
 was a bench trial, we note that the statutory language at issue merely states “on trial,” it does not distinguish between bench and jury trials.  Accordingly, a defendant who is charged only with first degree murder may be convicted of second degree murder regardless of whether she elects a bench or a jury trial.  

By contrast, the second part of section 9-2(c) specifies that in a “
jury
 trial” where the “defendant has requested” that the jury be given the option of finding her guilty of second degree murder, “the jury must be instructed” that it may not consider whether the defendant has met her burden of proof with regard to second degree murder unless it first finds that the State has proven beyond a reasonable doubt each of the elements of first degree murder.  720 ILCS 5/9-2(c) (West 1998).  Defendant acknowledges that a defendant who elects a bench trial may not have the right to preclude the trial judge from considering second degree murder.  Nonetheless, she argues she was entitled to exercise such a right because she proceeded by way of a jury trial.  Defendant has cited no reason why, in this situation, a defendant who elects a jury trial should be entitled to exercise “rights” that are denied to a defendant proceeding by way of a bench trial, nor do we believe there is a compelling reason to justify such a result.  

In our view, the legislature did not intend to distinguish between bench trials and jury trials.  Rather, the latter part of section 9-2(c) refers to jury trials only because its primary purpose is to set forth the proper manner in which to instruct the jury.  Moreover, the legislature’s use of “the defendant has requested” does not confer on the defendant a “right” to prevent the jury from considering an offense that is supported by the evidence.  Rather, the phrasing merely reflects the fact that it is usually the defendant who requests a second degree murder instruction, not the State.  Had the legislature intended to preclude the State from seeking an instruction on second degree murder, it would have been a simple matter to clearly convey that intention.  For example, the legislature could have stated, “
only
 a defendant may seek a second degree murder instruction” or “the State 
may not
 seek a second degree murder instruction.”  However, the legislature chose not to employ such language, and it is not our function to read into a statute words that are not within the plain intention of the legislature.  See 
People v. Fierer
, 124 Ill. 2d 176, 188 (1988).  In so holding, we disavow that portion of 
People v. Swanson
, 211 Ill. App. 3d 510, 515 (1991), intimating in 
dicta
 that a defendant who proceeded by way of a jury trial could be entitled to restrict the jury’s consideration of second degree murder.  We also acknowledge that 
Swanson
 improperly concluded that second degree murder was a lesser included offense of first degree murder.  See 
 Jeffries
, 164 Ill. 2d at 121-24 (noting inconsistent decisions regarding the mental state involved in voluntary manslaughter and murder and second degree murder and first degree murder).

We are also aware that certain commentators have expressed the opinion that, pursuant to section 9-2(c), only the defendant may seek a second degree murder instruction.  See R. Steigmann, 
First and Second Degree Murder in Illinois
, 75 Ill. B.J. 494, 496-97 (1987); T. O’Neill, 
An Analysis of Illinois’ New Offense of Second Degree Murder
, 20 J. Marshall L. Rev. 209, 229-230 (1986); but see J. Haddad, 
Second Degree Murder Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created
, 19 Loy. U. Chi. L.J. 995, 1017 (1988).  One such analysis was at least partially premised on the assumption that the State could not directly charge a defendant with an offense in which she incurred the burden of proof to establish mitigating circumstances because to do so would violate due process.  See 75 Ill. B.J. at 496, citing 
Mullaney
 
v. Wilbur
, 421 U.S. 684, 44 L. Ed.2d 508, 95 S. Ct. 1881 (1975).  However, subsequent decisions have resolved that issue and it is now settled that it is not unconstitutional for the State to directly charge a defendant with second degree murder.  
E.g.
 
People v. Burks
, 189 Ill. App. 3d 782, 784-85 (1989) (rejecting contention second degree murder exists only at defendant’s option and holding State may directly charge second degree murder); 
People v. Clark
, 207 Ill. App. 3d 439, 449 (1991) (would be impermissible for prosecutor to charge a defendant with first degree murder knowing she committed only second degree murder); see 
Jeffries
, 164 Ill. 2d at 115-17 (homicide statute does not unconstitutionally shift to defendant burden of proving element of offense); see also 84th  Ill. Gen. Assem., Senate Proceedings, May 23, 1985, at 38 (statements of Senator Sangmeister).  Accordingly, we reject the conclusion that second degree murder may be considered only at the defendant’s option.  

B. Whether second degree murder should be treated as a lesser included offense

Defendant next contends second degree murder should be treated as a lesser included offense of first degree murder for purposes of determining whether the jury should have been instructed on second degree murder over her objection.  Defendant relies on several cases dealing with lesser included offenses to support her contention that the decision to tender a lesser included offense instruction belongs to a defendant and not to the State or the trial judge.  In response, the State argues those cases are inapplicable because second degree murder is not a lesser included offense of first degree murder.

It is now well established that second degree murder is a lesser 
mitigated
 and not a lesser included offense of first degree murder.  See 
Jeffries
, 164 Ill. 2d at 122-23; 
People v. Newbern
, 219 Ill. App. 3d 333, 353 (1991).  The elements of first and second degree murder are identical.  
Jeffries
, 164 Ill. 2d at 122.  Second degree murder differs from first degree murder only because of the presence of a statutory mitigating factor.  
Jeffries
,164 Ill. 2d at 122.  Second degree murder is a “lesser offense” only in the sense it is punished less severely than first degree murder, and it is mitigated because it is “first degree murder 
plus
 defendant’s proof by a preponderance of the evidence that a mitigating factor is present.”  (Emphasis in original.) 
Jeffries
, 164 Ill. 2d at 122, citing 
Newbern
, 219 Ill. App. 3d at 352-53.

Where a defendant has been convicted of a lesser included offense, one may assume the State failed to prove an element of the greater offense, or that the defendant acted with a less culpable mental state than that required to prove the greater offense.  This differs from the situation involving first and second degree murder, where the State must prove each of the elements of first degree murder beyond a reasonable doubt 
before
 the fact finder may consider whether a mitigating factor has been established that would reduce first degree murder to second degree murder.  720 ILCS 5/9-2(c) (West 1998); 
Jeffries
, 164 Ill. 2d at 124.

“ ‘Establishing the mitigating circumstances of second degree [murder] - either sudden passion or unreasonable belief of self-

defense - does not change the fact that the person is still a 
murderer
; it merely results in a less severe punishment.  Thus, the mitigating circumstances do not establish "guilt" as defined in the Illinois Code; they merely prove that defendant is less culpable than other murderers.’ " (Emphasis in original.)  
Newbern
, 219 Ill. App. 3d at 350-51, quoting 20 J. Marshall L. Rev. at 221-22.

Relying on this distinction between the lesser mitigated offense of second degree murder and lesser included offenses, the State argues that 
People v. Brocksmith
, 162 Ill. 2d 224 (1994) and 
People v. Garcia
, 292 Ill. App. 3d 685 (1997), 
appeal denied,
 176 Ill. 2d 581 (1998), on which defendant primarily relies, are inapplicable where the instruction at issue is second degree murder.  However, the fact that second degree murder is not a lesser included offense does not automatically preclude principles developed in the context of lesser included offenses from being applied to second degree murder.  The lesser mitigated offense category is 
sui generis
 (
Newbern
, 219 Ill. App. 3d at 353), and the applicable principles and standards are not yet fully developed.  Yet even if we accept defendant’s contention that second degree murder should be treated 
as
 a lesser included offense for purposes of the issue before us, defendant still cannot prevail because 
Brocksmith
 and 
Garcia
 involved issues distinct from that with which were are now confronted.

In 
Brocksmith
, our supreme court held that the ultimate decision to submit an instruction on a lesser included offense belongs to a defendant and not to his attorney.  The 
Brocksmith
 court reasoned:

“[T]he decision to tender a lesser included offense is analogous to the decision of what plea to enter, and that the two decisions should be treated the same.  Because it is defendant’s decision whether to initially plead guilty to a lesser charge, it should also be defendant’s decision to submit an instruction on a lesser charge at the conclusion of the evidence.  In both instances the decisions directly relate to the potential loss of liberty on an initially uncharged offense.”  
Brocksmith
, 162 Ill. 2d at 229.

See also 
People v. Griffith
 158 Ill. 2d 476, 499-500 (1994) (Miller, J., specially concurring in plurality decision) (decision to tender second degree murder instruction “closely related” to decision of what plea to enter and ultimately belongs to defendant).  

In 
Garcia
, 292 Ill. App. 3d at 688-90, the court held that the trial judge may not instruct the jury on a lesser included offense where the State has not requested such an instruction and the defendant objects to giving it. 
 See 
People v.
 
Barnard
, 104 Ill. 2d 218, 232 (1984) (would not have been proper for trial judge to “interfere with defense counsel’s strategy and give the self-

defense and voluntary manslaughter instruction 
sua sponte
”); see also 
People v. Castillo
, 298 Ill. App. 3d 839 (1998), 
appeal allowed
, No. 86275 (February 4, 1998); 
People v. Gramc
, 271 Ill. App. 3d 282, 289-90 (1995), 
appeal denied
, 162 Ill. 2d 573; but see 
People v. Sinnott
, 226 Ill. App. 3d 923, 928-33 (1992) (trial judge may, over defendant’s objection, instruct jury on a lesser included offense); 
People v. Taylor
, 36 Ill. 2d 483, 488-91 (1967) (stating in 
dicta
 that trial judge has discretion to 
sua sponte
 instruct on lesser included offense of voluntary manslaughter)
. 
 The 
Garcia
 court reasoned that where the trial judge 
sua sponte
 instructs the jury on an uncharged lesser included offense over the defendant’s objection, the judge’s decision overrides the prosecutor’s discretion in determining which offense to charge, and, by introducing a new offense at the close of evidence, undermines the “defendant’s right to determine a knowing strategy of defense.”  
Garcia
, 292 Ill. App. 3d at 689; accord 
Barnard
, 104 Ill. 2d at 232.  In certain circumstances, such a decision by the trial judge may be “tantamount to a directed verdict of guilty.”  
Garcia
, 292 Ill. App. 3d at 689.  Moreover, the inclusion of a lesser included offense instruction increases the defendant’s risk of being subjected to a compromise verdict.  
Griffith
, 158 Ill. 2d at 493; 
People v. Lewis
, 97 Ill. App. 3d 982, 987-88 (1981); see 
Barnard
, 104 Ill. 2d at 232; 
Taylor
, 36 Ill. 2d at 490-91.  

We agree with defendant that the decision to tender a second degree murder instruction involves similar concerns.  See 
Griffith
, 158 Ill. 2d at 499-500 (Miller, J., specially concurring); 
Barnard
, 104 Ill. 2d at 232; 
People v. Hughes
, 109 Ill. App. 3d 352, 361-62 (1982).  Nonetheless, defendant’s reliance on 
Brocksmith
 and 
Garcia
 is misplaced.
  Brocksmith
 addressed the allocation of decision-making authority between a defendant and his attorney.  
Garcia
 addressed the scope of the trial judge’s discretion to give an instruction which neither party requested.  Neither 
Brocksmith
 nor 
Garcia
 holds that the trial judge, in the face of defendant’s objection, must refuse the State’s request to instruct the jury on a lesser included offense supported by the evidence.

Although a defendant has the right to have the jury instructed on her theory of the case, she may not exercise that right to preclude the State from requesting and receiving an instruction that is supported by the evidence.  “It is settled that, if the evidence admits of but one conclusion which is that the accused, if guilty at all, is guilty of the crime charged, it is error to give an instruction authorizing a conviction for a lesser included offense, and a defendant has a right to keep the jury from receiving instructions on an uncharged, lesser included offense where, for example, the defense is alibi or mistaken identity.”  
People v. Ivory
, 217 Ill. App. 3d 619, 623 (1991); accord 
Taylor
, 36 Ill. 2d at 489;
 
People v. Preston
, 341 Ill. 407, 420 (1930);
 
People v. Falkner
, 131 Ill. App. 3d 706, 710 (1985).  The rationale underlying a defendant’s right to refuse an instruction on a lesser included offense is that “such an instruction prejudices the defendant by inviting the jury to return a compromise verdict rather than continue to debate the defendant’s innocence.”  
Ivory
, 217 Ill. App. 3d at 623, citing 
People v. Keagle
, 37 Ill. 2d 96, 102 (1967).

However, the defendant’s “right” to pursue an all-or-nothing defense is not absolute.  Where the evidence raises a factual issue, the defendant may not preclude the State from having the jury instructed on an uncharged lesser included offense.  
Ivory
, 217 Ill. App. 3d at 624-25; 
People v. Nicholson
, 61 Ill. App. 3d 621, 624 (1978).  “Both the State and the defendant are entitled to the submission of appropriate jury instructions on the law that applies to their theory of the case if there was evidence to support the theory.”  
People v. Gwartney
, 289 Ill. App. 3d 350, 354 (1997) (State entitled to accountability instruction where supported by the evidence), 
vacated in part on other grounds
, 175 Ill. 2d 539 (1997); 
People v. Layne
, 286 Ill. App. 3d 981, 991 (1997) (no error where trial court instructed jury on definition of “deception” over defendant’s objection); see 
People v. Gilliam
, 172 Ill. 2d 484, 519 (1996); 
People v. Matter
, 371 Ill. 333, 338 (1939).
  Recognizing there are distinctions between second degree murder and lesser included offenses, we nonetheless find the above principles applicable to the instant case.  Accordingly, the second degree murder instruction was properly given if the evidence presented at defendant’s trial raised a factual issue as to that offense. 

When the jury is instructed on self-defense, it may conclude one of three things:  (1) the defendant did not have a subjective belief that use of force was necessary, in which case the verdict should be first degree murder; (2) the defendant subjectively believed that use of force was necessary and her belief was reasonable, in which case the verdict should be not guilty; or (3) the defendant subjectively believed that use of force was necessary but her belief was unreasonable under the circumstances, in which case the verdict should be second degree murder.  See 
Falkner
, 131 Ill. App. 3d at 712 (applying this reasoning in the context of an analogous case arising under the murder-voluntary manslaughter statute and concluding that both defendant and the State “have a right to request and receive a voluntary manslaughter instruction whenever a self-defense instruction is given”); 
People v. Weisberg, 
396 Ill. 412, 422 (1947) (where evidence supports it, manslaughter instruction should be given when “offered by either side”);
 
People v. Turcios
, 228 Ill. App. 3d 583, 594-95 (1992); see also 
People v. Lockett
, 82 Ill. 2d 546 (1980); Taylor, 36 Ill. 2d at 489.
(footnote: 2)  Thus, by raising the issue of self-defense, defendant placed before the jury the issue of the reasonableness of her belief that use of force was necessary.  Because the evidence raised a factual issue regarding an element of second degree murder, the trial judge appropriately acceded to the State’s request and instructed the jury on that offense.  A defendant is not entitled to preclude the State from seeking an instruction supported by the evidence because she based her defense on the hope that the State would neglect to request such an instruction. 

II. 

Whether the jury was properly instructed in accordance with the Illinois Pattern Jury Instructions

Defendant next contends that this cause should be remanded for a new trial because the jury was not instructed in accordance with the relevant Illinois Pattern Jury Instructions.  We agree, and therefore remand this matter for a new trial.  Although the State contends that defendant has waived review of this issue by failing to object at trial (see 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988) (to properly preserve an issue for review defendant must object at trial and raise the issue in a post trial motion)), it may be considered under the plain error doctrine because “[a] vital part of a trial is the reading of instructions by the court to the jury at the close of the oral arguments”
 (People v. Cross
, 272 Ill. App. 3d 354, 360 (1995), 
overruled on other grounds,
 
People v. Barney
, 176 Ill. 2d 69 (1997)).

Where a jury is to be instructed only on first and second degree murder, such as the instant case, the “A” series of pattern instructions should be used.  See Illinois Pattern Jury Instructions, Criminal, Nos. 2.01A, 7.06A, 26.01A (3d ed. 1992) (hereinafter cited as  IPI Criminal 3d, referenced in text as IPI No.); see also 
Cross
, 272 Ill. App. 3d at 360.  Where the jury is to be instructed on some other offense in addition to first and second degree murder, the “B” series of pattern instructions is appropriate.  See IPI Criminal 3d Nos. 2.01B, 26.01B; 7.06B (Supp. 1996).  In the case at bar, the trial judge orally charged the jury consistent with IPI No. 2.01A, instructing it that “a person charged with first degree murder may be found three different ways, (1) not guilty, or (2) guilty of first degree murder, or (3) guilty of second degree murder.”  See IPI Criminal 3d No. 2.01A.  Subsequently, the jury was instructed consistent with IPI No. 26.01B, which provides that “a person charged with first degree murder may be found (1) not guilty of first degree murder; or (2) guilty of first degree murder; or (3) guilty of second degree murder.”  The trial judge read and tendered verdict forms consistent with 26.01B.  Thus, the jury was not given a general “not guilty” verdict form.

The problem with these instructions is twofold.  First, the jury was improperly instructed pursuant to IPI No. 26.01B, which does not provide for a general “not guilty” verdict form, as opposed to IPI No. 26.01A, which requires a general “not guilty” verdict form.  See IPI Criminal 3d No. 26.02, Committee Note (noting that 26.01A should be used with general “not guilty” verdict form while IPI No. 26.01B requires specific not guilty verdict form).  Second, the error was compounded because the jury received conflicting instructions due to the combination of instructions from series “A” and series “B.”  Supreme Court Rule 451 (a) (177 Ill. 2d R. 451(a)) provides that the relevant Illinois pattern criminal instruction “shall be used, unless the court determines that it does not accurately state the law.”  Although committee comments are not the law, the trial judge may deviate from the suggested format only where it is necessary to conform to unusual facts or new law.  
People v. Banks
, 287 Ill. App. 3d 273, 280 (1997).  The instant case does not involve unusual facts and IPI No. 26.01A accurately states the applicable law.  Thus, departure from the pattern instructions was not warranted and IPI No. 26.01B should not have been substituted.  

People v. Cross
, which is similar to the case at bar, is instructive.  In that case, the jury was to be instructed only on first and second degree murder.  The trial court instructed the jury that it would receive three verdict forms: “ ‘not guilty,’ ‘guilty of first degree murder,’ and ‘guilty of second degree murder.’ ”
 Cross
, 272 Ill. App. 3d at 360.  However, the court read and tendered to the jury verdict forms that stated “ ‘not guilty of first degree murder,’ ‘guilty of first degree murder,’ and ‘guilty of second degree murder.’ ” 
Cross
, 272 Ill. App. 3d at 360.  The 
Cross 
court reasoned that failure to properly instruct the jury “deprived the jury of considering an alternative to guilty of second degree murder, which the court said it would give, since the only ‘not guilty’ instruction given was that related to first degree murder.” 
Cross
, 272 Ill. App. 3d at 361.  The same rationale applies to the case at bar.

Moreover, the pattern instructions make it abundantly clear that IPI Nos. 2.01A and 26.01B are incompatible.  The committee notes state that whenever IPI No. 2.01A is given, IPI No. 26.01A must also be given and that IPI No. 2.01A “may not be used in conjunction with any other instruction from the 26.01 series.”  IPI Criminal 3d 2.01A, Committee Notes.  Similarly, IPI No. 26.01B specifies that whenever it is given, IPI No. 2.01B must also be given, and that IPI No. 26.01B “may not be used in conjunction with any other instruction from the 2.01 series.”  IPI Criminal 3d No. 26.01B, Committee Note.  Thus, although IPI No. 26.01B is a proper instruction, it was not appropriate in this case.  

Although the jury was also instructed pursuant to IPI No. 7.06A (IPI Criminal 3d No. 7.06A), which provides, in part, that the jury may not consider whether defendant was guilty of second degree murder unless it first found the State proved beyond a reasonable doubt each of the elements of first degree murder, we are not convinced that this instruction was sufficient to cure jury confusion that may have resulted from the incorrect and conflicting instructions that were given.  The compound errors that occurred in this case undermined the reliability of the verdict thereby denying defendant a fair trial.  Accordingly, this matter is reversed and remanded.  

III. Whether the trial court properly denied defendant’s request for a defense of dwelling instruction

Defendant asserts she was entitled to a defense of dwelling instruction even though she voluntarily permitted defendant to enter her apartment.  The evidence shows defendant and the victim had an ongoing relationship and, at times, defendant permitted the victim to live at her apartment.  On the day of the shooting defendant, two other guests, and the victim were at defendant’s apartment.  Defendant, who had been drinking, became loud and obnoxious.  Eventually, the victim left and defendant closed the blinds, locked the windows, and barricaded the doors.  Defendant also loaded her gun and placed a baseball bat by her bedroom door.  When the victim returned, he began pounding on the door, yelling and cursing at defendant to let him in.  Defendant carried on for about 45 minutes.  Finally, defendant’s landlady knocked on the door and told defendant she must do something about the disturbance.  Through the closed door, defendant told the victim he could stay on her living room couch, but he must stay away from her the entire evening.  She also told the victim he could not enter her bedroom.  After admitting the victim to her apartment, defendant returned to her bedroom.

Shortly thereafter, defendant heard the victim throwing things in the living room and pacing in the hallway leading to her bedroom.  Defendant testified that the victim was angry and loud and talking about killing people and his experiences in Vietnam.  The victim entered defendant’s bedroom, grabbed the baseball bat and said, “I see you are ready for me.”  Although defendant told him to go back to the living room, the victim refused to go and continued to move closer to defendant.  Defendant retrieved the gun she had hidden under her pillow.  According to defendant, the victim said, “Go ahead, Kill me, and make sure you do it right, which means to do it between my eyes;  otherwise, I am going to get you first.”  Defendant testified she believed the victim was going to kill her, so she shot him in the forehead when he was approximately one foot away from her.  

The defense of dwelling instruction provides that a person is justified in the use of force when she reasonably believes such conduct is necessary to prevent or terminate another’s “unlawful” entry to or attack upon a dwelling.  Illinois Pattern Jury Instructions, Criminal, No. 24-25.07 (3d ed. 1992) (hereinafter IPI Criminal 3d).  However, the use of force intended or likely to cause death or great bodily harm is justified only if the entry is “made or attempted in a violent, riotous, or tumultuous manner” and the person reasonably believes such force is necessary to prevent an assault upon or personal violence to herself or another who is in the dwelling, or reasonably believes such force is necessary to prevent the commission of a felony in the dwelling.  IPI Criminal 3d No. 24-25.07.  

The defendant is entitled to have the jury instructed on her theory of the case, “and an instruction is warranted if there is any evidence, no matter how slight, to support it.”  
People v. Barnard
, 208 Ill. App. 3d 342, 349-50 (1991).  However, where the evidence fails to meet this minimum standard, the trial court may properly refuse an instruction.  
Barnard
, 208 Ill. App. 3d at 351-52.  To justify the use of force in defense of dwelling, “the entry into the dwelling must be unlawful or there must be an attack upon a dwelling.”  
People v. Ellis
, 107 Ill. App. 3d 603, 613 (1982).  

In the instant case, defendant voluntarily allowed defendant into her apartment in an attempt to avoid further disturbance.  Because the victim’s entry was not unlawful, the defense of defense of dwelling was unavailable to defendant and the trial judge properly refused the proposed instruction.  Contrary to defendant’s assertion, the landlady’s direction to do something about the disturbance did not amount to coercion thereby rendering the victim’s entry unlawful.  Moreover, this court has rejected the proposition that the defense of dwelling instruction should be given where the entry was lawful and the rightful occupant used force to evict a person who refused to leave.  See 
Barnard
, 208 Ill. App. 3d at 350-53; 
Ellis
, 107 Ill. App. 3d at 612-13.  Based on the record before us, we conclude that no error occurred.

IV. Whether the trial court improperly excluded evidence of the victim’s propensity for violence

Because this matter is remanded for a new trial, we need not address defendant’s contention that the trial court erred in excluding from evidence an excerpt from a term paper describing the victim’s violent character and pictures of the victim’s swastika and “white power” tattoo.  Resolution of this issue is not necessary to our disposition of this appeal, and the issue is unlikely to recur in the same context in which it is currently before us.  

CONCLUSION

For the foregoing reasons, this matter is reversed and remanded to the circuit court for a new trial on the offense of second degree murder only (see 
People v. Newbern
, 219 Ill. App. 3d 333, 352-55 (1991)).

Reversed and remanded in part.

GORDON and COUSINS, JJ., concur.

FOOTNOTES
1:     
 For a comprehensive discussion of these problems see T. O’Neill, 
“Murder Least Foul”: A Proposal to Abolish Voluntary Manslaughter in Illinois
, 72 Ill. B.J. 306 (1984); T. O’Neill, 
“With Malice Toward None”: A Solution to an Illinois Homicide Quandary
, 32 DePaul L. Rev. 107 (1982); J. Haddad, 
Second Degree Murder Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created
, 19 Loy. U. Chi. L.J. 995 (1988); J. Haddad, 
Allocation of Burdens in Murder-Voluntary Manslaughter Cases: An Affirmative Defense Approach
, 59 Chi.-Kent L. Rev. 23 (1982); D. Shanes, 
Murder Plus Mitigation: The “Lesser Mitigated Offense” Arrives in Illinois
, 27 J. Marshall L. Rev. 61 (1993).

2:     
We recognize the 
Taylor
 line of cases was decided under the murder-voluntary manslaughter statute.  However, in enacting the first and second degree murder statute, the legislature retained substantive law developed under the prior statute.  See 
e.g.
, 
People v. Lewis
, 229 Ill. App. 3d 874 (1992); 
People v. Russell
, 215 Ill. App. 3d 8 (1991).  Additionally, we are aware 
Taylor
 and its progeny have been interpreted to stand for the proposition that the trial court may 
sua sponte
 instruct the jury on an offense where the State has not requested such an instruction and the defense objects to giving the instruction, and note the possible conflict with 
Brocksmith
 and 
Garcia
 on this point. 
 Our opinion in the instant case should not be construed as expressing a position on that issue.