THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CARLOS IZQUIERDO-FLORES, Defendant-Appellee.

Second District   No. 2—01—0198

Opinion filed August 1, 2002.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

After admitting that he killed his aunt, defendant, Carlos Izquierdo-Flores, was charged by indictment with second-degree murder (720 ILCS 5/9—2(a)(1), (a)(2) (West 2000)). More than 120 days after defendant filed a speedy trial demand on the original charges, the State filed a second indictment charging first-degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 2000)) and sought leave to nol-pros the second-degree murder charges. The trial court granted defendant's motion to dismiss the second indictment. The State appeals, and we reverse and remand.

On September 7, 2000, the State charged defendant by complaint with second-degree murder. On the same date, defendant filed a speedy trial demand. On September 20, 2000, the State filed an indictment charging defendant with second-degree murder. Count I of the indictment alleged that, on September 6, 2000, while committing first-degree murder and acting under a sudden and intense passion resulting from serious provocation by the victim, defendant choked the victim with his hands, thereby causing her death. Count II alleged that defendant acted under an unreasonable belief that circumstances that would justify or exonerate the killing were present.

On September 26, 2000, the trial court arraigned defendant and set a November 20 trial. On November 3, 2000, at defendant's request, the court continued the trial until January 2, 2001. On December 6, 2000, the parties agreed to continue the trial to January 8, 2001. On January 8, defendant requested a conference. pursuant to Supreme Court Rule 402(d) (177 Ill. 2d R. 402(d)). Following the conference, the parties stated that plea negotiations would continue.

On January 10, 2001, the State sought a continuance because Dr. Nancy Jones, who performed the autopsy on the victim, would be unavailable to testify until after January 19. During a January 16 hearing, the State sought leave to dismiss the pending charges and file first-degree murder charges. Daniel Kleinhubert, the assistant State's Attorney, explained that Jones was out of the country during all of

December 2000 and, in January, was engaged in trials and teaching classes. Kleinhubert explained that the second-degree murder charge was based on defendant's statement to the police that he and the victim got into a fight and that, while defending himself, defendant strangled her with his hands. Kleinhubert spoke to Jones on January 12, 2001, and reviewed the autopsy report with her. Jones told Kleinhubert that after reviewing the photos of the victim she was of the opinion that the marks on the victim's neck were made by a ligature, such as a rope, belt, or piece of clothing. Noting that defendant had been in custody for months and was prepared to offer an open plea to the pending charge, defense counsel objected to the new charges. The trial court did not rule on the State's request.

On January 17, 2001, the State filed a second, three-count indictment charging first-degree murder. The second indictment alleged that defendant used an object to strangle the victim. Defendant moved to dismiss the second indictment. Attached to defendant's motion were Jones's autopsy report dated September 16, 2000, and the grand jury minutes from September 20, 2000.

The report states that Jones performed the autopsy on September 7, 2000. A receipt stamp on the report bears a date of September 18, 2000. In the report, Jones concluded that the cause of death was strangulation. In listing the victim's injuries, the report notes:

"2. On the undersurface of the chin, there is a deep 4.75 by 1 inch red abrasion.

3. On the anterior neck, over the midline, there is a large, deep red abrasion which measures 5 by 1.75 inch.

4. On the undersurface of the chin, there are two smaller deep red abrasions which measure 1 by 0.5 and 1.25 by 3/8 inch."

The grand jury minutes included the testimony of Detective Eduardo Navarro of the Waukegan police department. While questioning Navarro, the assistant State's Attorney referred to Jones's report. Navarro testified that, when he first observed defendant on September 6, 2000, defendant had scratches on his face and neck and a laceration on his finger. Defendant was taken to the hospital for treatment and later gave Navarro a statement. Defendant stated that he returned home early in the morning after a night of drinking. He went into the bathroom to clean up. When he came out of the bathroom, the victim was waiting for him and began striking him with a belt. Defendant took the belt from her and tossed it away. Defendant and the victim continued struggling. Defendant put his hands on the victim's neck and choked her until she stopped fighting.

In its response to defendant's motion, the State claimed that it did not receive Jones's report until December 11, 2000, and that Jones

was unavailable until January 12, 2001. The State asserted further that on January 16, 2001, Detective Navarro spoke to the victim's sister, Gabriela Flores. Flores stated that, three days after the incident, she returned to the apartment where she, defendant, and the victim lived. She went there to clean the apartment before taking the victim's body to be buried in Mexico. While looking in a closet that defendant used, Flores found a plastic bag containing a bloody shirt, bloody pants, and a bloody belt. She threw the bag and its contents in the Dumpster.

Relying on speedy trial principles, the trial court granted defendant's motion to dismiss the second indictment. The court found that the new charges arose from the same acts that gave rise to the original charges and that the new charges were not the result of newly discovered evidence. As a result, the first-degree murder charges were subject to the original speedy trial term. Because the first-degree murder charges were not before the court when defendant requested or agreed to the continuances, any delay that was attributed to defendant in connection with the original charges could not be applied to the new charges.

The trial court denied the State's timely motion to reconsider and denied defendant's request to be released pursuant to Supreme Court Rule 604(a)(3) (188 Ill. 2d R. 604(a)(3)). On February 8, 2001, the State filed a certificate of impairment and a timely notice of appeal. It appears that the trial court has delayed the proceedings on the second-degree murder charges until this appeal is resolved.

■ Under the speedy trial statute, section 103—5(a) of the Code of Criminal Procedure of 1963 (Code), a defendant who is in custody shall be tried within 120 days from the date he is taken into custody. 725 ILCS 5/103—5(a) (West 2000). Section 103—5(f) provides further that the 120-day period will be suspended during any delay occasioned by the defendant. 725 ILCS 5/103—5(f) (West 2000).

■ Where new and additional charges arise from the same facts as the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time for bringing the defendant to trial is governed by the same limitations period that applies to the original charges. *People v. Gooden*, 189 Ill. 2d 209, 217 (2000); *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981). In computing the speedy trial period on the new charges, however, continuances obtained by the defendant in connection with the original charges are not attributed to him. *People v. Dressler*, 317 Ill. App. 3d 379, 387 (2000). Such delays do not apply to the new charges because the new charges were not before the court when the defendant obtained the continuances. *Williams*, 94 Ill. App. 3d at 248-49.

The State argues that the first-degree murder counts were not "new and additional" charges. According to the State, because the second-degree murder charges included all of the elements of first-degree murder, the first-degree murder charges actually were before the trial court from the beginning of the prosecution.

■ The State's argument is premised on the general rule that an indictment of an offense also serves as an indictment of all included offenses even though the latter are not specifically set forth in the indictment. *People v. Melmuka*, 173 Ill. App. 3d 735, 736 (1988). If the State later charges the defendant with such an included offense, then any delay occasioned by the defendant on the original charge also applies to the new charge. *Dressler*, 317 Ill. App. 3d at 387 (where State originally charged defendant with aggravated kidnaping and later added kidnaping charge based on same facts, kidnaping charge was not a "new and additional" charge).

■ Second-degree murder is a lesser mitigated offense of first-degree murder. *People v. Jeffries*, 164 Ill. 2d 104, 122-23 (1995); *People v. Kauffman*, 308 Ill. App. 3d 1, 10 (1999). The elements of first-degree murder and second-degree murder are identical. *Jeffries*, 164 Ill. 2d at 122. Second-degree murder differs from first-degree murder only because of the presence of a statutory mitigating factor such as a serious provocation or an unreasonable belief in justification. *People v. Porter*, 168 Ill. 2d 201, 213 (1995). Second-degree murder is a "lesser offense" only in the sense that it is punished less severely than first-degree murder and it is mitigated because it is first-degree murder plus the presence of a mitigating factor. *Jeffries*, 164 Ill. 2d at 122.

■ We agree with the State that the first-degree murder counts were not "new and additional" charges. If the State had proceeded on the second-degree murder charges here, it would have been required to prove all of the elements of first-degree murder. Therefore, in essence, the first-degree murder charges were before the court from the beginning of the prosecution.

Defendant argues that, although the second indictment did not add any new elements to the charged offense, it did place on him a burden that did not exist before. Defendant notes that, by charging a defendant with second-degree murder, the State alleges that it can prove the elements of first-degree murder but concedes the presence of mitigating factors. See *People v. Mitchell*, 221 Ill. App. 3d 926, 932 (1991); *People v. Burks*, 189 Ill. App. 3d 782, 785 (1989). According to defendant, if the State were able to withdraw the second-degree murder charges and charge him with first-degree murder, he would be required to litigate whether a mitigating factor was present, an issue that was not before the court previously.

A defendant charged with second-degree murder is not required to prove anything. The State must prove all of the elements of first-degree murder and concede the presence of a mitigating factor. *People v. Golden*, 244 Ill. App. 3d 908, 919 (1993). When a defendant is on trial for first-degree murder, to be found guilty of second-degree murder, he must prove by a preponderance of the evidence the presence of a statutory mitigating factor. 720 ILCS 5/9—2(c) (West 2000). If the defendant meets this burden, then the State must disprove beyond a reasonable doubt any mitigating factor that the defendant has raised. 720 ILCS 5/9—2(c) (West 2000); *Golden*, 244 Ill. App. 3d at 919.

Although allowing the first-degree murder charges here may place an additional issue before the trier of fact, the fact remains that the elements of second-degree murder and first-degree murder are identical. The mitigating factors that reduce the offense from first-degree murder to second-degree murder are not elements of the offense but are affirmative defenses that do not bear upon the ultimate burden of proof. *Golden*, 244 Ill. App. 3d at 918. " 'Establishing the mitigating circumstances of second degree [murder] *** does not change the fact that the person is still a *murderer*; it merely results in a less severe punishment. Thus, the mitigating circumstances do not establish "guilt" ***; they merely prove that defendant is less culpable than other murderers.' " (Emphasis in original.) *People v. Newbern*, 219 Ill. App. 3d 333, 350-51 (1991), quoting T. O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209, 222 (1986).

Also, the second indictment here does not necessarily place any additional burden on defendant. As we just noted, the second indictment does not allege any new elements. Moreover, although the statute places on the defendant the burden of proving the presence of a mitigating factor, a defendant is entitled to have the jury instructed on his theory of the case, and an instruction is warranted if there is even slight evidence to support it. *People v. Heaton*, 256 Ill. App. 3d 251, 257 (1994). Thus, defendant could present evidence to establish a mitigating factor, but the State's evidence could establish it as well. *Golden*, 244 Ill. App. 3d at 917.

The relevant pattern jury instructions discussing the burden of proof direct the jurors to consider all of the evidence bearing on whether a mitigating factor is present. Illinois Pattern Jury Instructions, Criminal, No. 2.03A (4th ed. 2000). When the only evidence of second-degree murder has come out during the State's case, the defendant may request that the jury be instructed that "[t]he defendant is not required to present any evidence in order to establish

the existence of a mitigating factor." Illinois Pattern Jury Instructions, Criminal, No. 2.03A (4th ed. 2000). Here, even if defendant did not present any evidence, the circumstances of the offense potentially would support giving the jury a second-degree murder instruction.

Defendant stresses that first-degree murder is a more serious offense with greater penalties. This does not affect our analysis, however. We recognize that the rule upon which the State relies typically is applied where the subsequent charge is a lesser included offense of the original charge. The lesser mitigated offense category presents a unique situation, however, that falls under the rule as well. As our supreme court has recognized, "second degree murder is first degree murder plus mitigation." *Porter*, 168 Ill. 2d at 213. Because the first-degree murder charges here do not require defendant to defend against any elements that were not before the trial court previously, allowing the State to proceed on the second indictment would not frustrate the purpose of the speedy trial statute.

For these reasons, we agree with the State that the first-degree murder charges in the second indictment were not "new and additional charges." As a result, the delays attributed to defendant in connection with the second-degree murder charges apply to the first-degree murder charges as well. Because the speedy trial term had not expired when the State filed the second indictment, the trial court should not have dismissed it.

To avoid confusion on remand, we stress that the filing of the second indictment did not commence a new speedy trial term. Tolled by the delays occasioned by defendant and the time during which this appeal is pending (see 188 Ill. 2d R. 604(a)(4)), the original term governs the second indictment. There is no question that the second indictment arises out of the same incident upon which the original charges were based. Also, the trial court properly found that the State should be charged with knowledge of the facts giving rise to the second indictment. The autopsy report was completed before the original indictment was filed in September 2000, and the prosecuting attorney referred to the report during the original grand jury proceedings. The State claims that Dr. Jones was unavailable during December 2000 and the first part of January 2001. The State fails to explain, however, why it could not have consulted with Dr. Jones in September, October, or November 2000 or why it could not have asked another medical expert to review the autopsy report. There is nothing indicating that the opinions Jones expressed in January 2001 were based on anything other than the original autopsy report.

Also, the State claims that it was not until January 2001 that it learned about the bloody belt and clothes hidden in defendant's closet.

We fail to see how this is new evidence. From the beginning of the prosecution, the State knew that a belt was involved in the altercation and that defendant briefly possessed it. Also, the State knew that defendant was injured during the altercation with the victim. The State does not explain how the discovery of the belt or the clothes bolsters the first-degree murder charges. Clearly, the delay in filing the first-degree murder charges was not due to the discovery of new evidence but instead was the result of the State's lack of diligence in investigating the case.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with this opinion on the second indictment.

Reversed and remanded.

McLAREN and BYRNE, JJ., concur.