THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLARENCE WALTON, Defendant-Appellant.

Third District   No. 3—92—0867

Opinion filed July 2, 1993.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Clarence Walton, was convicted of the offense of armed robbery. He was sentenced to a term of six years in the Department of Corrections. On appeal, the defendant argues that he was deprived of a fair trial when the prosecutor, during closing argument, commented that he had a motive to lie because he had been accused of a crime. The defendant also argues that the trial judge erred in refusing his modified jury instruction that would have told the jurors that they could take a witness' drug addiction into account in judging the believability of the witness. For the reasons that follow, we affirm.

James O'Donnell testified that at about 12:30 a.m. on May 14, 1992, he was smoking a cigarette on his front porch when he was approached by the defendant. O'Donnell recognized the defendant as someone he had seen around the neighborhood and knew as "C.W." The defendant held a knife to O'Donnell's throat and asked if he had any money. O'Donnell replied that he had $11. The defendant then took $11 from O'Donnell's pocket and walked away, patting his coat pocket as if he had a gun inside. The defendant told O'Donnell that he would "fill his ass full of holes" if he got into any trouble over the incident. O'Donnell went inside, got a baseball bat, and followed the defendant for awhile. Eventually, O'Donnell went back inside and called the police.

On cross-examination, O'Donnell admitted that he had been a crack cocaine addict. O'Donnell claimed that he had been straight for approximately six weeks to two months before the incident. At

the time of trial, O'Donnell claimed to have been straight for the previous five months, with only one relapse that occurred at a party a few weeks after the robbery.

LaToya Johnson, the defendant's girlfriend, testified that at about 8 p.m. on May 13, 1992, the defendant left their apartment to run some errands for his mother. Johnson went to bed at around the same time. The defendant was there when she got up at around 5:30 a.m.

Detective Glen Perkins of the Peoria police department testified that he arrested the defendant on May 20. At the time of his arrest, the defendant told police that his name was Andre Kelly. When questioned about the robbery incident, the defendant claimed to know nothing about it. The defendant stated that on the date in question he was at his girlfriend's apartment from 3:30 p.m. until 7 a.m. the next morning.

The defendant related a markedly different account of the robbery incident. The defendant testified that, on the night of the incident, he was walking past O'Donnell's apartment when O'Donnell got his attention by tapping on his window. O'Donnell then came outside and asked the defendant if he had any drugs. The defendant claimed that he had known O'Donnell for about a year and had sold crack cocaine to him on several occasions.

The defendant offered to sell O'Donnell some crack cocaine for $20, but O'Donnell had only $11. O'Donnell said that he would get the rest of the money and he went back into his apartment. When O'Donnell came back out, the defendant gave him the cocaine. O'Donnell then pulled a knife on the defendant. The defendant and O'Donnell exchanged a few words, following which the defendant slapped the knife away from his face and turned and walked away. The defendant then said to O'Donnell, "Fuck it, I'm going to call the police on you anyway." After reflecting further on the propriety of a drug pusher calling the police to complain that he was robbed of his crack, the defendant decided not to make the call. O'Donnell kept the crack cocaine and the $11.

In rebuttal, the State produced O'Donnell's mother, who testified that when O'Donnell came into their apartment at about 12:30 a.m. on the date in question he was very upset and wanted to call the police. She did not see a knife on him.

The jury found the defendant guilty of armed robbery. The circuit court sentenced him to a term of six years' imprisonment. The defendant now brings the instant appeal.

The defendant contends that he was denied a fair trial when the prosecutor asserted during closing argument that he had a motive to lie simply because he had been accused of a crime. We have condemned the prosecutor for making similar remarks in several recent cases. (See *People v. Crowder* (1993), 239 Ill. App. 3d 1027, 607 N.E.2d 277; *People v. Ellis* (1992), 233 Ill. App. 3d 508, 599 N.E.2d 498; *People v. Watts* (1992), 225 Ill. App. 3d 604, 588 N.E.2d 405.) As we pointed out in *Ellis*, the defendant has no motive to lie if he is innocent. By arguing that he has such a motive, the State is implying that he committed the crime charged. This implication serves to erode the presumption of innocence.

■■ While we have made it clear to the State that we do not approve of such tactics, it is incumbent on defense counsel to point out errors in the trial court. To preserve an issue for review both a trial objection and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defense counsel neither objected to the improper argument nor raised it in the post-trial motion. Nevertheless, defendant wants us to address the issue as plain error pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). Plain error is defined as error of such magnitude that it denied the defendant a fair trial, or error in a trial where the evidence is closely balanced. (*People v. Whitehead* (1987), 116 Ill. 2d 425, 508 N.E.2d 687.) We find that the prosecutor's comments, though improper, did not amount to plain error. The evidence showed that the defendant lied to the police about his true name and also about his whereabouts on the night of the incident. The defendant initially stated that he was Andre Kelly. He later admitted his true identity, but stated that he had been at his girlfriend's apartment all evening on the date in question. Then, at trial, the defendant testified that he was at the scene of the crime, but that it was actually he who had been robbed. Given this set of circumstances, the prosecutor's implication that the defendant was a liar could not have prejudiced him.

The defendant contends that the evidence was closely balanced because the case turned on a mere question of credibility between O'Donnell and himself. Such an argument ignores both the fact that O'Donnell's version of the events was corroborated by his mother's testimony that he was upset and wanted to call the police after the incident, and also the fact that the defendant had been impeached by his prior conduct and statements to the police. We decline to address the prosecutor's comments as plain error.

The defendant also argues that the trial judge erroneously refused one of his proposed jury instructions. The defendant proposed a modified version of Illinois Pattern Jury Instructions, Criminal, No. 1.02 (3d ed. 1992) (hereinafter IPI Criminal 3d No. 1.02), that was rejected by the trial court. The court gave the standard IPI Criminal 3d No. 1.02 instruction, which reads as follows:

"Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness."

The defendant proposed adding the phrase "his drug addiction" to the list of factors that can be considered. According to the defendant, this tendered modification was "crucial" to the outcome of the instant case because the prosecution's witness, James O'Donnell, was an admitted crack addict.

When a party tenders a non-IPI jury instruction, the trial judge has discretion to determine if the instruction should be given. (*People v. Maldonado* (1989), 193 Ill. App. 3d 1062, 550 N.E.2d 1011.) Also, any error in refusing a defendant's tendered instruction on the credibility of a witness is harmless if the failure does not so prejudice the defendant as to affect the verdict. *People v. Bertucci* (1980), 81 Ill. App. 3d 851, 401 N.E.2d 1123.

■ We initially note that the evidence at trial did not support the giving of the tendered instruction. The unrebutted testimony of O'Donnell indicated that he was using drugs neither at the time of the incident nor at the time of trial. Further, the facts of O'Donnell's drug usage, his previous addiction, and his relapse were explored in great detail during the trial. It is not reversible error to deny a tendered addict instruction, where evidence of the addiction is before the jury so that it can make its own determination of the believability of the witness. (*People v. Steidl* (1991), 142 Ill. 2d 204, 568 N.E.2d 837.) In *Steidl*, our supreme court rejected the addict instruction tendered by the defendant and held that the giving of the standard instruction on the believability of the witnesses (IPI Criminal 2d No. 1.02) was sufficient when the witness' drug addiction was thoroughly discussed at trial. (*Steidl*, 142 Ill. 2d at 238-39,

568 N.E.2d at 851.) Similarly, in the instant case, O'Donnell's drug addiction was thoroughly discussed at trial, making the standard IPI Criminal 3d No. 1.02 sufficient under the circumstances.

For the reasons stated, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SLATER and BARRY, JJ., concur.