THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDDIE FALCONER, Defendant-Appellant.

First District (1st Division)   No. 1—95—0828

Opinion filed July 22, 1996.

McDermott, Will & Emery, of Chicago (Lynnette L. Lupia, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Mark R. Gerhardt, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Freddie Falconer was convicted of first degree murder and sentenced to a term of 50 years in prison. Defendant now appeals his conviction.

The following facts were adduced at trial. Chicago police detective James O'Leary testified that at approximately 5:30 p.m., on September 20, 1993, he and his partner, Detective Paladino, were assigned to investigate the murder of Issac McKenzie. Detective O'Leary then proceeded to 3945 South Ellis, arriving at approximately 6:30 p.m. In the alley between Ellis and Lake Park, Detective O'Leary observed a man lying on his back, with a pool of blood under his head. There was also a green hat under his head that contained what appeared to be blood and brain matter. Detective O'Leary observed three deep gashes over the victim's right eye and another on the side of his head. The man was dead.

Detective O'Leary testified that the man was lying next to a white Buick Electra automobile and that his hands appeared to have grease on them, like a car mechanic. There were tools around the Buick Electra. A red and white Buick Regal was parked just north of the white Buick Electra. The trunk of the Buick Regal was open; there were several tools in the trunk.

Detective O'Leary spoke with Chicago police officers May and Tolliver, who were the beat officers initially assigned to the scene. Detective O'Leary also spoke with several civilians, including Johnny Jones, Craig Holland, Emmett Hubbard and Curtis Jackson. After speaking with these people, Detective O'Leary went to 3950 South Ellis, a nine-story Chicago Housing Authority housing project building, looking for Freddie Shawn Falconer. Detective O'Leary visited an apartment there. Although defendant was not at the apartment, Detective O'Leary spoke with defendant's sister.

At approximately 8:45 p.m., defendant and his mother came into the police station. After advising defendant of his *Miranda* rights, Detective O'Leary interviewed defendant in the presence of his mother. According to Detective O'Leary, defendant stated that he and two friends, Jasmine McClellan and Allen Brown, were all carrying golf clubs when they came upon Issac McKenzie. Defendant claimed that McKenzie owed defendant's mother some money. McKenzie made a derogatory comment about defendant's mother, whereupon defendant, McClellan and Brown all struck McKenzie with their golf clubs, then left the scene.

Detective O'Leary then testified regarding the initial police efforts to locate McClellan and Brown. Although McClellan and Brown were not at the addresses provided by defendant, Detective O'Leary spoke with Brown's aunt, who gave the detective three golf clubs. According to Detective O'Leary, at approximately 11 p.m., McClellan and Brown arrived at the police station. McClellan, who was 10 years old, was accompanied by his aunt; Brown, who was 15 years old, was

accompanied by his mother. These adults were present at the interviews Detective O'Leary conducted with McClellan and Brown.

Detectives O'Leary and Paladino then reinterviewed defendant in the presence of his mother during the early morning hours of September 21, 1993. Detective O'Leary informed defendant that McClellan and Brown provided a different version of the incident. According to O'Leary, defendant then stated that Brown did not have a golf club at the time of the incident and stated that defendant was the only one who struck Issac McKenzie, about five or six times. Detective O'Leary testified that he asked whether McKenzie had a weapon; defendant responded that McKenzie did not and that defendant had been mad that McKenzie had taken money from defendant's mother.

On cross-examination, Detective O'Leary testified that defendant did not appear to be ill, but that defendant's mother mentioned that defendant had the flu and that she had some prescription medicine for him. Detective O'Leary also stated that McKenzie had a tire iron under one of his hands at the scene. Detective O'Leary testified that he did not specifically ask defendant about the tire iron, adding that defendant never mentioned it.

Dr. Joseph Cogan, a forensic pathologist and deputy medical examiner for the Cook County medical examiner's office, testified that McKenzie died from multiple head injuries. Dr. Cogan also noted that McKenzie had contusions on the right side of his neck, shoulder and chest; the latter were accompanied by rib fractures. Dr. Cogan stated that there was a total of seven blows to McKenzie consistent with being struck by a golf iron.

Assistant State's Attorney (ASA) David Studenroth testified regarding a written statement he took from defendant in the presence of defendant's mother early on September 21, 1993. ASA Studenroth then published the statement to the jury. The statement is similar to Detective O'Leary's description of defendant's prior oral statements. In the written statement, McClellan and Brown visited defendant at his home to tell him where "Ike" (McKenzie) was. Defendant was mad at McKenzie because he believed that McKenzie had taken $160 that his mother had dropped at home; McKenzie and his girlfriend once lived with defendant's mother. Defendant got a golf club from Brown; McClellan also had a golf club.

Defendant and his two friends found McKenzie at 3945 South Ellis, working under the hood of a car. Other people were present, including "Emmett," "Minnie," and "Johnny Jones." Defendant asked about the money, McKenzie responded with a derogatory comment about defendant's mother. Defendant became angry. Defendant

then struck McKenzie with the golf club while his back was turned. McKenzie had nothing in his hands. McKenzie fell to the ground. Defendant then "wound up" and hit McKenzie in the head as he lay on the ground, trying to get up. McClellan and Brown did not strike McKenzie.

Defendant testified on his own behalf. Defendant's testimony was similar to his prior statements, except that defendant added that after McKenzie made a derogatory comment about defendant's mother, he came at defendant with a tire iron. Defendant testified that he struck McKenzie the first time because he thought his life was in danger. Defendant also testified that he struck McKenzie after McKenzie fell down because he was mad that McKenzie had come at him with the tire iron.

Craig Holland testified that Issac McKenzie was working on his car when defendant arrived and struck McKenzie with an iron golf club. According to Holland, defendant said nothing to McKenzie before striking him.

Following closing arguments and jury instructions, the jury found defendant guilty of first degree murder. The trial court sentenced defendant to 50 years in prison. The trial court denied defendant's post-trial motion; defendant now appeals.

## I

■ Defendant's primary argument on appeal is that the State's comments during closing and rebuttal argument denied him a fair trial. A prosecutor is given great latitude in closing argument, and the propriety of his comments is within the trial court's discretion. *People v. Morrison*, 137 Ill. App. 3d 171, 184, 484 N.E.2d 329, 339-40 (1985). The prosecution has the right to comment on the evidence that has been adduced at trial and make all legitimate inferences therefrom. *People v. Wheatley*, 183 Ill. App. 3d 590, 601, 539 N.E.2d 276, 283 (1989). Improper prosecutorial remarks generally do not warrant reversal unless they are so prejudicial as to constitute such a material factor in defendant's conviction that the jury likely would have reached a contrary verdict had the remarks not been made. *People v. Townsend*, 136 Ill. App. 3d 385, 394, 483 N.E.2d 340, 347 (1985). The standard of review applied to arguments by counsel is similar to the standard used in deciding if a plain error was made. *People v. Henderson*, 142 Ill. 2d 258, 323, 568 N.E.2d 1234, 1265 (1990). Moreover, a defendant is not denied a fair trial where the jury has heard ample evidence supporting the verdict and is admonished that the opening and closing statements are not evidence. See, *e.g., People v. Thomas*, 137 Ill. 2d 500, 530, 561 N.E.2d 57, 69 (1990). Keeping

these general rules in mind, this court turns to address the specific arguments advanced by the defendant.

## A

■ The first argument to which defendant objects is the prosecution's statement to the jury during rebuttal:

> "What you have to decide in this case is really who was telling you the truth.
>
> Was it this guy, Freddie Falconer? Does he have anything to lose in this courtroom? \*\*\* Could he be more desperate than any other person \*\*\* in this? Or do you think Johnnie Jones and Emmett Hubbard and Craig Holland are desperate to come in here and tell you something that isn't absolutely the truth?"

There is a split in authority as to whether this type of comment is proper. The third district has held that such comments improperly imply that a defendant is presumed to lie simply because of his status as a defendant and diminish the presumption of innocence. See, *e.g.*, *People v. Walton*, 246 Ill. App. 3d 552, 555, 616 N.E.2d 638, 639 (1993); *People v. Crowder*, 239 Ill. App. 3d 1027, 1030-31, 607 N.E.2d 277, 280 (1993); *People v. Ellis*, 233 Ill. App. 3d 508, 510-11, 599 N.E.2d 498, 501 (1992); *People v. Watts*, 225 Ill. App. 3d 604, 607, 588 N.E.2d 405, 407 (1992). The first district, second division, relied on *Watts* and its progeny in *People v. Cross*, 272 Ill. App. 3d 354, 364, 650 N.E.2d 1047, 1055 (1995). The fourth district, however, has expressly rejected *Watts* and its progeny, noting that juries are routinely instructed that a defendant's testimony is to be judged in the same manner as any other testimony, including any interest, bias or prejudice he may have. *People v. Armstrong*, 275 Ill. App. 3d 503, 506-07, 655 N.E.2d 1203, 1205-06 (1995). Accordingly, the fourth district concluded that the State may comment on the defendant's interest.

Neither the parties nor the cases they cite, however, refer to any supreme court decision on the issue. Although not directly addressing the question of prosecutorial comment, in *People v. Malmenato*, 14 Ill. 2d 52, 59, 150 N.E.2d 806, 810 (1958), the supreme court stated:

> "The jury are not entitled to disregard the accused's testimony merely because he is the defendant in the case, but [they] may consider his interest in the result of the trial in weighing his testimony."

Our review of the case law leads this court to conclude that prosecutorial argument that a defendant's testimony should be disregarded based on his status as a defendant is improper, but that argument that asks the jury to consider a defendant's interest in the outcome of the case in evaluating his credibility is proper. In this case, we conclude that the comments were not improper, as they were framed

as comparing defendant's credibility with the credibility of Holland, who testified, and other eyewitnesses identified by Detective O'Leary. The State did not urge the jury to completely disregard defendant's testimony.

## B

■ Defendant next contends that the prosecution improperly attempted to shift the burden of proof to defendant by making rebuttal arguments that defendant failed to produce witnesses. It is reversible error for the prosecution to attempt to shift the burden of proof to the defense. *People v. Leger*, 149 Ill. 2d 355, 399, 597 N.E.2d 586, 606 (1992). However, the *Leger* court refused to hold that comments regarding a defendant's affirmative defense were reversible error. *Leger*, 149 Ill. 2d at 400-01, 597 N.E.2d at 606. Indeed, the *Leger* court held that the trial court should have sustained the objection to the comment, not because it shifted the burden, but because it misstated the law regarding the defense at issue. *Leger*, 149 Ill. 2d at 400-01, 597 N.E.2d at 606.

■ The first comment in this vein to which defendant objects is the prosecutor's statement:

"I didn't see Jasmine coming in, his buddy, and I didn't see Allen coming in, his buddy. He testified they are his friends."

The context of this comment, however, was in regard to the defense's cross-examination of Detective O'Leary regarding whether McClellan and Brown were asked about the tire iron. The comment relates to defendant's claim of self-defense. Self-defense is an affirmative defense, and unless the State's evidence raises the issue, the defendant must present some evidence as to each of the elements of the defense. *E.g., People v. Goosens*, 262 Ill. App. 3d 722, 727, 640 N.E.2d 284, 288 (1994). As *Leger* suggests, where the defendant testifies and asserts an affirmative defense, the prosecutor's passing comments about that defense are not reversible error. Indeed, insofar as the defendant bears the burden of production on the issue of self-defense, and the burden of proof on the issue of imperfect self-defense where second degree murder is a possible verdict (as it was in this case), it is questionable whether comments on whether defendant met that burden can be said to impermissibly shift the burden of proof to the defense.

■ The other comment to which defendant objects in this regard is the prosecutor's statement:

"[T]he evidence indicates that [defendant] did tell the police what happened that day, that they did talk to his companions. That the detectives talked to the witnesses, and they were told exactly what you folks heard, or counsel would have brought in Detective O'Leary."

This comment falls short of reversible error as well, not only for the reasons outlined above, but also because Detective O'Leary testified and was cross-examined by the defense as to what the detective was told by witnesses at the scene. It is difficult to see how the comment could have been a material factor in defendant's conviction, given that the detective was in fact questioned on the topic raised by the prosecution.

## C

■ Defendant next objects to the State's closing argument that the defense that McKenzie was brandishing a tire iron was fictitious:

> "May I suggest that a reasonable inference from the evidence is a Falconer brain trust took place sometime after those scene photos were developed. *** That's it. *** That's it. That's the ticket. This will work. This will fool maybe one person on a jury in Cook County. Well, Mr. Falconer, I don't think so."

The State correctly notes that defendant failed to object to this comment in his post-trial motion, thereby waiving the issue for review.

Nor can the comment be deemed plain error. Defendant relies on cases holding that closing arguments by the prosecutor which suggest that defense counsel fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury are improper. *People v. Kidd*, 147 Ill. 2d 510, 542, 591 N.E.2d 431, 446 (1992); *People v. Emerson*, 97 Ill. 2d 487, 497-98, 455 N.E.2d 41, 45 (1983). Nevertheless, despite the admonitions of the supreme court and this court that referring to a defense as "horse manure" or a "smokescreen" is improper, Illinois courts have rarely reversed a conviction on that basis alone. See *People v. Carroll*, 260 Ill. App. 3d 319, 346, 631 N.E.2d 1155, 1173 (1992) ("horse manure"); *People v. Moore*, 172 Ill. App. 3d 325, 335, 526 N.E.2d 591, 598 (1988) (same); *People v. Hunter*, 124 Ill. App. 3d 516, 548, 464 N.E.2d 659, 684 (1984) ("smokescreen" used eight times); *People v. Robinson*, 91 Ill. App. 3d 1138, 1146, 415 N.E.2d 585, 591 (1980) (and cases cited therein). In this case, when viewed in context, the comment may refer to defendant alone or to defendant and his mother. Defendant concedes that the comment does not expressly refer to defense counsel. Thus, the comment does not warrant a reversal of defendant's conviction, given the record in this case.

## D

■ Defendant further objects to the State's argument that the jury

> "must weigh the assistant [S]tate's [A]ttorney, a licensed attorney, against the credibility of Mrs. Falconer and the defendant."

The State correctly notes that defendant failed to object to this comment either at trial or in his post-trial motion, thereby waiving the argument on appeal.

However, even if the waiver rule were relaxed, the argument would fail to persuade this court. Defendant relies primarily on *People v. Montgomery*, 254 Ill. App. 3d 782, 626 N.E.2d 1254 (1993), in which this court held that the State unfairly bolstered its witnesses' credibility when it commented several times in closing arguments on their status as prosecutors and police officers and that law enforcement did not work hard to convict the wrong people. This case is closer to *People v. Rice*, 234 Ill. App. 3d 12, 599 N.E.2d 1253 (1992), in which this court declined to reverse a conviction based upon the State's "rash passing comment" that referred to a prosecutor's status.

## E

■ Defendant also argues that the cumulative effect of the comments noted above constitutes reversible error. Initially, it should be noted that defendant also presents a variant of this argument in which defendant claims that "where the only issue before the jury is whether the defendant acted in self-defense," improper comments have been held to be reversible error. However, the sole case defendant cites, *People v. Davidson*, 235 Ill. App. 3d 605, 601 N.E.2d 1146 (1992), involved trial errors in addition to improper argument, including an improper evidentiary ruling and improper impeachment by the State.

The resolution of the general argument that the cumulative effect of the comments warrants a reversal will depend upon the court's evaluation of the individual errors. Where the alleged errors do not amount to reversible error on any individual issue, there generally is no cumulative error. See *People v. Albanese*, 102 Ill. 2d 54, 82-83, 464 N.E.2d 206, 220 (1984). Given our disposition of each of defendant's arguments, we conclude that their cumulative effect does not warrant reversal of defendant's conviction, given the record on appeal.

## II

■ Finally, defendant argues that the second degree murder statute is unconstitutional, but admits that this claim was rejected by our supreme court in *People v. Jeffries*, 164 Ill. 2d 104, 646 N.E.2d 587 (1995). Defendant notes that the United States Supreme Court is the final arbiter of the federal due process claims rejected in *Jeffries*. Defendant fails to note, however, that until such time as the United States Supreme Court rules contrary to *Jeffries*, this court is bound by the decision of our supreme court.

794

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and WOLFSON, JJ., concur.