**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230195-U

Order filed January 10, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0195 Circuit No. 22-CF-291 |
| | ) | |
| CYQUIM T. JAMES, | ) ) | Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Justice McDade[1] specially concurred.

_____

**ORDER**

¶ 1      *Held*: Defendant was not deprived of a fair trial.

---

[1] Justice McDade participated in this appeal and has since retired. Our supreme court has held that the departure of a judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur. *Proctor v. Upjohn Co.*, 175 Ill. 2d 394, 396 (1997).

¶ 2    Defendant, Cyquim T. James, appeals his convictions for domestic battery and aggravated domestic battery arguing that he was deprived of a fair trial due to the cumulative effect of three trial errors. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On June 10, 2022, defendant was charged by indictment with home invasion (720 ILCS 5/19-6(a)(2) (West 2022)), two counts of residential burglary (*id.* § 19-3(a)), aggravated domestic battery (*id.* § 12-3.3(a-5)), and domestic battery (*id.* § 12-3.2(a)(1)). Relevant to this appeal, the indictment alleged that defendant committed aggravated domestic battery when he strangled Melissa Jordan and domestic battery when he caused Jordan bodily harm while striking her about the face with his hands and had been previously convicted of aggravated battery. One count of residential burglary was dismissed by the State and the remaining charges proceeded to jury trial on January 9, 2023.

¶ 5    The State began its opening statements saying:

> "Imagine you are at home lying in bed fast asleep. Now imagine you are suddenly startled awake by someone on top of your chest with their hands around your neck choking you to the point where you have trouble breathing and are losing consciousness. Now imagine this person is someone you formerly dated.
>
> For most of us, this sounds like a nightmare situation that we'll never have to worry about, something that we see in the movies, right? However, for *** Jordan on May 22nd, 2022, this was her reality."

The State then discussed the facts that it intended to show during trial.

¶ 6    Jordan testified that she and defendant were in an on-and-off relationship for four years. She testified that they were dating at the time of trial and on May 22, 2022. However, in her

2

statements to police, Jordan indicated she and defendant had been broken up on the day of the offense. When Jordan was questioned about the events that occurred on May 22, 2022, at approximately 5:45 a.m., she testified that she had consumed alcohol with a man she met online the evening before returning home. Regarding the attack, Jordan largely testified that she did not know or did not remember due to being intoxicated. She did not recall providing either written or videotaped statements to Kankakee police officer Joshua Schneider. Regarding her injuries, Jordan testified that "[l]ater in the future" the ribs on the left side of her body hurt. Further, she confirmed that photographs depicting bruising, cuts, and abrasions on her face, neck, side, hand, and foot accurately reflected her condition on and shortly after May 22, 2022.

¶ 7    The State admitted body camera footage of Jordan's statements to police on the morning of the offense as well as her signed written account as substantive evidence. These statements revealed that at some point, Jordan had fallen asleep in her bed. She awoke to defendant on top of her, choking her with both hands. Defendant also punched her several times in the face and ribs. Jordan was choked to the point of unconsciousness. She indicated that she was "scared to death" during the attack. When asked if defendant had said anything to her, Jordan stated, "I remember him saying 'bitch.'"

¶ 8    Schneider testified that he responded to a call at Jordan's apartment on the morning of May 22, 2022. While there, Schneider had the opportunity to observe Jordan. He opined, based on his experience, that Jordan did not appear to be intoxicated. Nor did he smell the odor of an alcoholic beverage emanating from her. Upon completing his investigation at her apartment, Schneider went to the hospital to speak with Jordan. He observed injuries to the left side of her mouth and eye. Schneider took photographs of those injuries as well as injuries to her ear, neck,

3

ribs, and foot. Schneider indicated that he wrote Jordan's account of the events which she reviewed and signed on May 22, 2022. He read the statement for the jury:

"I, Patrolman Schneider, am writing this statement of *** Jordan due to her being injured from the attack.

I woke up to being choked and punched by [defendant]. He choked me with both hands around my throat. I could not breathe and blacked out.

[Defendant] punched me in the face several times. I screamed my daughter's name. At some point, [defendant] stopped and left."

¶ 9 During its initial closing argument, the State explained to the jury the general elements of domestic battery, including that the victim must be a family or household member. The State explained that a family or household member also included individuals in a dating relationship. During closing argument, defense counsel commented on the inconsistency between Jordan's testimony and her prior statements, stating "the fact that she couldn't come into court under oath and repeat exactly what she said on those—on that video is very telling, is very telling." In its lengthy rebuttal argument, the State responded: "Domestic battery cases are unique. Why is that? It's the domestic component. *** The victim and the defendant have a relationship. *** With relationships, there are feelings. That's natural, common sense, life experience, and feelings that are not found in other crimes." The State briefly explained that in cases like retail theft or driving while under the influence, the witnesses and defendant have no existing connection to one another. Counsel objected to the State explaining the nature of domestic violence cases and how victims testify. The court overruled the objection, and the State continued:

"They do have feelings, love. They dated. They're saying—she says they're still dating, love. Fear, she said when he was beating her up, she was

scared to death. Concern, we don't want to see bad things happen to people we love even if they hurt us. I mean, that's just life experience.

We like to think that the victim would be brave enough to come into court, take the stand, and testify against her abuser. We would like to think that. But in this case in order to find the defendant guilty, you're going to have to believe that a victim of domestic violence would come in here, take the oath, sit in that stand, and then lie to protect her abuser. That's what happened in this case.

And she has reasons—our victim has reasons, again, not to testify against the defendant, the love, the fear, the concern, a combination of all three.

So we know why a victim would change their story, because of the love, the concern for their abusers."

¶ 10    Over defendant's objection, the court provided the jury with Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.06-3.07) regarding Jordan's testimony that she remembered defendant saying "bitch." The instruction stated:

"You have before you evidence that the defendant made a statement relating to the offense charged in the indictment. It is for you to determine whether the defendant made the statement and, if so, what weight should be given to the statement.

In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."

The jurors were also instructed that statements in opening statements and closing arguments were not evidence and any statements not supported by the evidence should be disregarded.

5

¶ 11    The jury found defendant not guilty of home invasion and residential burglary and guilty of aggravated domestic battery and domestic battery. Defendant filed a motion for a new trial arguing, *inter alia*, that the court erred in allowing the State's closing argument about the nature of domestic violence cases. The motion was denied. Defendant was sentenced to six years' imprisonment for aggravated domestic battery and a concurrent term of three years' imprisonment for domestic battery. Defendant appealed.

¶ 12                                   II. ANALYSIS

¶ 13    On appeal, defendant argues that he was deprived of a fair trial by the effect of three cumulative errors: (1) the State's improper opening statement which asked the jury to imagine they were in Jordan's position at the time of the incident; (2) an erroneous jury instruction provided by the court that defendant had given a statement about the offense; and (3) the State's improper discussion during closing arguments of the nature of domestic violence cases and why victims might lie. Defendant maintains that each error is individually reversible in addition to collectively creating a pervasive pattern of unfair prejudice. Defendant acknowledges that the first two alleged errors were forfeited but argues that they constitute reversible plain error.

¶ 14    Generally, to preserve an issue for appellate review, a defendant must make a contemporaneous objection to the error and file a written posttrial motion raising the issue. *People v. Allen*, 222 Ill. 2d 340, 350 (2006). Unpreserved claims of error may be reviewed under the plain error doctrine. See Ill. S. Ct. R. 615(a) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). This doctrine permits a reviewing court to remedy a "clear or obvious error" when: (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it

6

affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant contends that his first two claims of error are reversible under the first prong of the plain error analysis. The first step is to determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 15                                A. Opening Statement

¶ 16        First, defendant argues that the State began their opening statement by asking the jury to imagine themselves in the same scenario that it maintained had occurred between Jordan and defendant. Defendant contends that such statements are improper as they serve only to encourage the jurors to identify with the victim, abandon their neutrality, and decide the case based on personal bias or anger toward the defendant. Defendant did not preserve this claim of error where he failed to contemporaneously object to the statements and did not include the claim in his posttrial motion.

¶ 17        "The purpose of an opening statement is to apprise the jury of what each party expects the evidence to prove." *People v. Kliner*, 185 Ill. 2d 81, 127 (1998). These statements should be general, concise, and not argumentative. *People v. Jones*, 2016 IL App (1st) 141008, ¶ 22. When making opening statements, the State may comment on the evidence it expects to present, however, "comments intending only to arouse the prejudice and passion of the jury are improper." *Id.* ¶ 21.

¶ 18        Here, the State asked the jurors to imagine everything that Jordan went through on the morning of the offense. Specifically, the State requested that the jurors imagine they were awoken by a former lover striking and choking them to the point of unconsciousness. While these comments are based on the evidence that the State expected to show, to ask the jurors to

7

envision themselves being beaten and strangled in the same scenario as Jordan is designed to create a sense of empathy and a bond between the jurors and Jordan which is improper. See *People v. Spreitzer*, 123 Ill. 2d 1, 38 (1988) (the State is not free to make statements which "invite the jurors to enter into some sort of empathetic identification with the victims").

¶ 19 Having found a clear and obvious error, the next step is to determine whether the evidence was closely balanced. Whether evidence is closely balanced presents a different question than whether the evidence is sufficient to support the defendant's conviction beyond a reasonable doubt. *Piatkowski*, 225 Ill. 2d at 566. The question is whether "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice." *People v. Sebby*, 2017 IL 119445, ¶ 51. We employ a commonsense evaluation of the evidence and consider the totality of the evidence presented. *Id.* ¶ 53. Evidence may be considered closely balanced when the trier of fact's verdict is primarily based on its credibility determination. See *People v. Naylor*, 229 Ill. 2d 584, 608 (2008); *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 17. However, there is no credibility contest where one party's account is "unrefuted, implausible, or corroborated by other evidence." *People v. Montgomery*, 2018 IL App (2d) 160541, ¶ 31. When evaluating the strength of the evidence, we must consider both "the quantum and quality" of evidence. *Piatkowski*, 225 Ill. 2d at 571.

¶ 20 Defendant argues the State's evidence hinged on Jordan's statements in the body camera footage and her written statement. Defendant contends that because Jordan had been heavily impeached with prior inconsistent statements, had a tumultuous on-and-off relationship with him, and testified that she was intoxicated at the time of the incident, it was likely that her credibility had been undermined in the eyes of the jury, and it would be logical for them to doubt the veracity of her recorded statements rendering the evidence closely balanced.

8

¶ 21    While Jordan did largely testify that she could not remember anything regarding the incident, the jury was provided with substantive evidence that defendant choked and punched her through her written and video recorded statements to police on the morning of the offense. Further, jurors heard Schneider's testimony that Jordan did not appear intoxicated and observed her demeanor and interactions with Schneider on the body camera footage. Additionally, the jury was presented with photographs of injuries that Jordan sustained which corroborated the statements that she made to police. Schneider testified that he observed injuries to Jordan's mouth and eye. Jordan testified that the photographs accurately depicted her condition after the incident. No competing version of events was presented to the jury. Based on the evidence provided by Schneider's testimony, Jordan's statements to police, and the corroborative photographs and testimony, the evidence supporting defendant's conviction was not closely balanced. See *People v. Williams*, 228 Ill. App. 3d 981, 986 (1992) (finding that the evidence was not closely balanced where eyewitness evidence was corroborated by physical evidence and evidence provided from the police officers). We conclude that no reversible error occurred.

¶ 22                              B. Jury Instruction

¶ 23    Second, defendant argues that the court erred when it provided the jury with an instruction indicating that defendant had made a statement related to the charged offenses by saying the word "bitch" to Jordan. Defendant contends that the word "bitch" is not necessarily associated with the charged offenses and the instruction was misleading to the jury and prejudicial against defendant. Defendant did not preserve this claim of error in his posttrial motion.

¶ 24    "The function of jury instructions is to convey to the jury the law that applies to the evidence presented." *People v. Herron*, 215 Ill. 2d 167, 187 (2005). "[J]ury instructions should

9

not be misleading or confusing." *People v. Bush*, 157 Ill. 2d 248, 254 (1993). Their correctness depends on "whether ordinary persons acting as jurors would fail to understand them." *Herron*, 215 Ill. 2d at 188. IPI Criminal No. 3.06-3.07 is a "special cautionary instruction" warranted by the introduction of a defendant's self-incriminating statements. *People v. James*, 2017 IL App (1st) 143391, ¶ 131. To qualify as a statement, the speech or writing must make a claim of fact and express a proposition that is either true or false. *Id.* ¶ 119. This jury instruction "applies to a defendant's self-incriminating statements—confessions, admissions, or false exculpatory statements—relating to the charged offense(s)" and cannot be meaningfully applied to nondeclarative utterances like commands or threats. *Id.* ¶ 133.

¶ 25        Here, the evidence demonstrated that defendant said the word "bitch" to Jordan. That word alone is a single utterance presumably aimed at insulting Jordan. It is a nondeclarative utterance which makes no assertions of fact and does not speak to the charged offense in any way. Accordingly, the court erred in providing the jury with this instruction. However, as discussed above, this error does not require reversal where the evidence is not closely balanced. *Supra* ¶ 21.

¶ 26                                    C. Closing Argument

¶ 27        Third, defendant argues that the court abused its discretion when it overruled defendant's objection to the State's closing argument regarding the nature of domestic violence cases and how victims testify in such matters. Defendant contends that the State's generalized statements were not supported by the record where the State did not have a witness testify about the nature of domestic violence cases, how they differ from other cases, and how personal feelings can induce a victim to lie for their abuser.

¶ 28    A prosecutor has wide latitude in closing arguments and may comment on both the evidence which it presented at trial and any fair, reasonable inferences arising therefrom. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009). Further, prosecutors may "discuss subjects of general knowledge, common experience, or common sense in closing argument." *People v. Beard*, 356 Ill. App. 3d 236, 242 (2005). Prosecutors may also comment on the credibility of the witnesses so long as the comments are based on the evidence. *People v. Alexander*, 127 Ill. App. 3d 1007, 1077 (1984). A reviewing court will consider closing arguments as a whole, rather than isolating select phrases or statements. *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 43. "The regulation of the substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion." *Id.* ¶ 44.

¶ 29    Here, the prosecutor spoke generally about the nature of domestic battery cases before tying it back to Jordan and defendant's relationship specifically. It is common knowledge that domestic battery charges involve domestic relationships. Further, prior to the complained-of statements, the jurors had been informed that proving the victim was a family or household member was an element required for domestic battery charges. To briefly mention that other crimes do not have the same domestic component is obvious and general knowledge. Defendant argues that the State's discussion on how personal feelings of love, fear, and concern for their loved one can push a person to lie for their abuser encouraged the jurors to decide to render a verdict on their personal feelings rather than the evidence. However, jurors do not abandon their common sense when they enter the courtroom and will generally be aware of common factors, like these which would make a witness unreliable. *People v. Steidl*, 142 Ill. 2d 204, 238 (1991).

11

¶ 30        Further, the generalization was a very small part of the overall closing argument. The State proceeded into a more specific discussion of Jordan being in a relationship with defendant, loving defendant, and fearing defendant which derived from her earlier testimony. Accordingly, the court did not abuse its discretion in overruling defendant's objection to these arguments.

¶ 31                                            D. Cumulative Error

¶ 32        Finally, defendant argues that the cumulative effect of the errors deprived him of a fair trial. Every criminal defendant, regardless of their guilt or innocence, is entitled to a fair and impartial trial. *People v. Blue*, 189 Ill. 2d 99, 138 (2000). When determining whether the cumulative effect of several errors deprived a defendant of his right to a fair trial, we employ the same test as the second prong of the plain error test. *Id.* "We ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair." *Id.*

¶ 33        We do not believe that the errors committed during trial called into question the fairness of the trial and integrity of the judicial process as required by the second prong of the plain error analysis. A prosecutor's improper statements only amount to reversible error when those statements create substantial prejudice against a defendant, such that it is impossible to say whether a guilty verdict resulted from those statements. *People v. Nieves*, 193 Ill. 2d 513, 533 (2000). Here, the statements, while improper, were brief, related to the evidence, and not so egregious that the verdict would have been different in their absence. Additionally, providing the jurors with IPI Criminal No. 3.06-3.07 was inconsequential. The only evidence before the jury of any potential "statement" made by defendant was his use of the word "bitch." Whether the jury believed that he uttered that word does not undermine confidence in defendant's convictions

12

considering the evidence presented. Thus, we conclude that the cumulative effect of these errors did not deprive defendant of a fair trial.

¶ 34                                    III. CONCLUSION

¶ 35        The judgment of the circuit court of Kankakee County is affirmed.

¶ 36        Affirmed.

¶ 37        JUSTICE McDADE, specially concurring:

¶ 38        I concur in the majority's analysis and disposition because I agree that the constellation of trial errors presented here did not rise to the level of plain error. I write separately, however, to emphasis and correct the errant cumulative error analyses that have been too often expressed in other recently appellate decisions. See *e.g.*, *People v. Alexander*, 2024 IL App (3d) 210575-U; *People v. Kline*, 2024 IL App (1st) 221595, ¶ 83; *People v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 110 *People v. Sims*, 2019 IL App (3d) 170417, ¶¶ 55, 60.

¶ 39        Taken together, those types of analyses seriously undermine the critical role that cumulative error review plays in our system of justice. Our supreme court has explained that role as upholding the integrity of the judicial process by correcting unfair conditions created at trial by a combination of errors that are not otherwise reversible when viewed individually. While not reversible on their own merit, the court has warned that the combination of those errors may unfairly alter the outcome of a trial, requiring reversal to preserve the integrity of our system of justice. See *Blue*, 189 Ill. 2d at 139-40.

¶ 40        Without a clear and accurate understanding of how to properly evaluate a cumulative error claim, our courts can neither provide the mandated protections nor fairly mete out justice. Because of the pressing need to rectify the misunderstandings that have arisen from spurious interpretations of cumulative error, I write separately.

13

¶ 41    I begin with the appellate decision in *People v. Desantiago*, 365 Ill. App. 3d 855, 871 (2006), where the court's cursory rejection of the defendant's cumulative error claim asserted that "the cumulative errors that warrant such an extreme result must themselves be extreme." In support, the court cited *People v. Hall*, 194 Ill. 2d 305, 351 (2000). *Id*. In *Hall*, however, our supreme court did not make that broad, generalized declaration of law. Instead, it applied the legal principles of law it had previously enunciated in *People v. Blue*, 189 Ill. 2d 99 (2000), to the facts in *Hall*, concluding that "the extreme circumstances present in *Blue*, which compelled this court to reverse the defendant's conviction and to order a new trial, are not present here." *Hall*, 194 Ill. 2d at 350. The court's statement recognized that the errors in *Hall* did not rise to the level necessary to establish a likelihood of prejudice at trial as they had in *Blue*. By making that statement, our supreme court did not implicitly announce a new legal standard that required each of the claimed trial errors to "themselves be extreme" to mandate due to cumulative impact of those errors, as *Desantiago* baldly proclaimed.

¶ 42    A similar misstatement of the law was echoed more recently in *People v. Green*, 2017 IL App (1st) 152513, ¶ 118, in which the court stated, "There generally is no cumulative error where the alleged errors do not amount to reversible error on any individual issue," citing *People v. Doyle*, 328 Ill. App. 3d 1, 15 (2002) (citing *People v. Falconer*, 282 Ill. App. 3d 785, 793 (1996)), and *People v. Caffey*, 205 Ill. 2d 52, 118 (2001) (rejecting a cumulative error claim "where no error occurred at all, or any error that may have occurred did not rise to the level of plain error"). A review of the cases relied on in *Green*, however, again quickly reveals the flaws in those underlying rationales.

¶ 43    The decision in *Doyle* expressly relied on the explanation found in *Falconer*, which stated, "[t]he resolution of the general argument that the cumulative effect of the comments

14

warrants a reversal will depend upon the court's evaluation of the individual errors. Where the alleged errors do not amount to reversible error on any individual issue, there generally is no cumulative error. (See *People v. Albanese*, 102 Ill.2d 54, 82–83 (1984).)" *Falconer*, 282 Ill. App. 3d 785, 793. Thus, the reasoning in both *Falconer* and *Doyle* relies on the rationale cited in *Albanese*.

¶ 44     Initially, I note that the decision in *Albanese* long preceded our supreme court's more recent explanation of cumulative error in *Blue*. Moreover, a review of the cited portions of *Albanese* reveals that its cumulative error analysis is not inconsistent with the subsequent the court's analysis in *Blue* and that it also fails to support the legal declarations set forth in *Falconer* and *Doyle*.

¶ 45     In *Albanese*, the court rejected the defendant's claims that jury instructions addressing the issue of mitigation were erroneous and that Illinois's death penalty statute was unconstitutional prior to addressing his cumulative error claim. *Albanese*, 102 Ill. 2d at 82. In rejecting that cumulative error claim, the court stated, "The whole can be no greater than the sum of its parts, and defendant has failed to demonstrate anything approaching reversible error in the myriad of arguments offered to justify a new trial." *Id.* at 83. Critically, it added that "[w]hile it is true that trial errors may have a cumulative effect when considered together (*People v. Killian*, 42 Ill.App.3d 596, 601 (1976)), the defendant has failed to establish this in the case at bar." *Albanese*, 102 Ill. 2d at 83.

¶ 46     Thus, although *Albanese*'s reference to the whole not being greater than the sum of its parts could initially suggest that the cumulative effect of trial errors can never be greater than the combination of each of those errors, the supreme court immediately tempered that reference. In doing so, the court explicitly recognized the unique effect that can result from a combination of

15

trial errors viewed together. Although the combination of errors alleged in *Albanese* failed to rise to the level of reversible error, when viewed either individually or together, the court did *not* state that it is not possible for the cumulative effects of *any* set of trial errors to ever mandate reversal. Indeed, the *Albanese* court expressly acknowledged that the cumulative effect of some trial errors could require a different outcome than that arising out of the individual errors viewed alone. That statement of cumulative error does not conflict with the supreme court's more recent discussion in *Blue*.

¶ 47 As the court in *Blue* held, the cumulative effect of the trial errors was sufficient to make "a new trial *** necessary in order to preserve the trustworthiness and reputation of the judicial process. We do not disagree that the evidence proving defendant's guilt is overwhelming. Nonetheless, *regardless of the weight of the evidence, as guardians of constitutional rights and the integrity of the criminal justice system, we must order a new trial when, as here, we conclude that defendant did not receive a fair trial.* Each of the errors detailed ***, in and of itself, casts doubt upon the reliability of the judicial process. Cumulatively, we find that the errors created a pervasive pattern of unfair prejudice to defendant's case." (Emphasis added.) *Blue*, 189 Ill. 2d at 139.

Thus, despite overwhelming evidence of the defendant's guilt, the court held that the cumulative effect of the trial errors, which were not reversible alone, required the outright reversal of the defendant's convictions and sentence and a remand for a new trial. *Blue*, 189 Ill. 2d at 139.

¶ 48 Contrary analyses that require the individual errors to be substantial, or even reversible, on their own misstate cumulative error analysis and undermine the critical role it plays in our system of justice. Only by applying the law on cumulative error as our supreme court intended, can our judicial system continue to serve its constitutional function as an instrument of justice.

16

¶ 49 Nonetheless, often due to its lack of independent substantive analysis, our appellate court has all too frequently espoused overly broad, and seriously erroneous, statements regarding the potential effect of cumulative errors. Those decisions generally perpetuate the addition of other requirements, such as those injected by *Desantiago* and *Green*, for a finding of prejudice based on cumulative error. Taken together, those decisions, along with a multitude of others, have severely undermined the use of cumulative error review as a means of ensuring fair and just court proceedings, as mandated in *Blue*. As *Blue* recognized, trial "errors [may] assume a synergistic effect" that is sufficient to severely undermine a party's fundamental right to a fair trial. *Blue*, 189 Ill. 2d at 139.

¶ 50 Although, the cumulative effect of the individual trial errors here did not surpass the threshold for reversal by showing a "pervasive pattern of unfair prejudice" (*Blue*, 189 Ill. 2d at 139), our courts must remain amenable to fairly and impartially reviewing all cumulative errors claims, considering them on their merits and not merely brushing them aside without any real analysis, or, worse yet, perpetuating inaccurate approaches to that review. ' " "Even those guilty of the most heinous offenses are entitled to a fair trial. *Whatever the degree of guilt*, those charged with a *** crime are entitled to be tried by the standards of guilt which [the legislature] has prescribed." ' (Emphasis in original.) *People v. Green*, 74 Ill. 2d at 455 (Ryan, J., specially concurring) (quoting *Screws v. United States*, 325 U.S. 91, 107 (1945))." *Blue*, 189 Ill. 2d at 139. For those reasons, I specially concur in the analysis and disposition in the instant case.